EISMANN, Justice.
This is an appeal out of Kootenai County from an order of the district court affirming on appeal the orders of the magistrate court in a prosecution for driving under the influence of alcohol. The challenged orders were: (a) the granting of a continuance to the State due to the unavailability of a witness; (b) the refusal to appoint a separate judge to hear a request for funds for the defense; (c) the denial of a motion in limine to exclude the results of a breath test on the ground that procedures for administering the test had not been properly adopted by the Idaho State Police; and (d) the defendant’s consent to the breath test was invalid because it was obtained by the threat of a monetary penalty and loss of her driver’s license for one year. We affirm the order of the district court.
I.
Factual Background.
On February 23, 2013, at about 2:00 a.m., Felicity K. Haynes was arrested by a state trooper for driving while under the influence of alcohol. The trooper placed her in the back seat of his patrol car, where he intended to have her submit to an evidentiary test for concentration of alcohol in her breath by using a hand-held Lifeloc breath testing de *39 vice. Prior to asking her to do so, the officer played an audio recording that informed her of the consequences of refusing to submit to the test, as required by Idaho Code section 18-8002(3). Those consequences included that she would be subject to a civil penalty of $250 and would have her driver’s license absolutely suspended for a period of one year. After playing the recording, the trooper asked Ms. Haynes to submit to the breath test, and she did so. The testing of two breath samples showed an alcohol concentration of 0.161 and 0.158, both of which exceeded the statutory limit of 0.08. Based upon those results, she was charged with the offense of driving while under the influence of alcohol.
On March 9, 2013, defense counsel filed a motion asking the magistrate court to suppress the results of the breath test on the ground that the Idaho State Police had not adopted rules pursuant to the Idaho Administrative Procedures Act establishing procedures for the maintenance and operation of breath testing devices, but had instead done so merely by issuing written standard operating procedures. In the motion, he requested oral argument but did not specify a date for the argument. Defense counsel filed an amended motion in limine on April 15, 2013, but the amended motion in limine did not give notice of a hearing date. It requested oral argument and an opportunity to present evidence. On April 16, 2013, defense counsel filed a motion to suppress in which he contended that the trooper’s warrantless stop and arrest of Ms. Haynes were unconstitutional. In that motion, he requested that the motion be set for oral argument and/or an evidentiary hearing.
On April 17, 2013, the magistrate court held a pretrial conference. During the conference, defense counsel requested a continuance of the trial, and Ms. Haynes stated on the record that she waived her right to a speedy trial. The court granted the continuance.
On May 30, 2013, defense counsel filed an amended memorandum in support of the motion to suppress the results of the breath test. In that memorandum, he raised the issue that Ms. Haynes’s consent to the breath test was invalid.
On June 4, 2013, the magistrate court held a pretrial conference, during which the amended motion in limine and the motion to suppress were to be heard. At the commencement of the hearing, the prosecutor asked for a continuance of the motion to suppress because the state trooper “has a child uh, issue as far as having to be with the — babysitting a child this morning.” The prosecutor also stated that defense counsel had just filed the amended memorandum raising the issue of whether her consent to the breath test was invalid, that he had been out of state, and that he had only returned the previous day. Defense counsel objected to the continuance, stating, “We think that it would impune [sic] the neutrality of the court to give them a continuance on the basis of something that the officer is claiming last second.” Defense counsel said that the state trooper was necessary to testify regarding the recently raised issue of the validity of Ms. Haynes’s consent to perform the breath test and that he would not object to continuing that motion, but he objected to continuing the motion to suppress. Defense counsel also stated, ‘We don’t think that the State has provided any lawful reason for their witness not being here.” Defense counsel did not assert that his client would be prejudiced by the continuance. The magistrate court granted the motion for a continuance. On June 5, 2013, defense counsel filed a motion seeking an appointment of another magistrate judge to hear an ex parte application for funds to assist the defense.
The defense motions were heard on July 18, 2013. The motion for appointment of another judge to hear an ex parte motion for additional funds was argued first, and at the conclusion of the argument the magistrate court announced that it denied the motion.
The motion to suppress based upon the alleged illegality of the stop was heard next. The prosecutor called the state trooper who *40 testified to the reason for stopping the vehicle that Ms. Haynes was driving. The court found the trooper to be credible and ruled that “the State has met their [sic] burden of proof of establishing a reasonable and articulable suspicion that the vehicle was being driven in violation of the traffic laws and was legitimately stopped.”
Prior to the hearing, the defense stipulated that the state trooper had the required reasonable suspicion to request that Ms. Haynes submit to a test for alcohol concentration, that he gave her the required information before doing so, and that she “consented to the breath test.” The court ruled that her consent was not involuntary.
Finally, defense counsel did not present any oral argument on the amended motion in limine, but chose to rely upon the briefs he had filed. The magistrate court orally denied the motion.
On July 22, 2013, Ms. Haynes pled guilty to the charge of driving while under the influence of alcohol. Pursuant to Rule 11(a)(2) of the Idaho Criminal Rules, the prosecutor, the defense counsel, and Ms. Haynes agreed that the plea was conditional; that she reserved the right to appeal the orders of June 4, 2013, and July 18, 2013; and that if she prevailed on appeal she would withdraw her guilty plea. The magistrate court accepted the plea agreement and sentenced Ms. Haynes. She then appealed to the district court. After briefing and argument, the district court affirmed the magistrate court’s rulings. Ms. Haynes then appealed to this Court.
II.
Did the District Court Err in Holding that the Magistrate Court Did Not Abuse Its Discretion in Granting a Continuance of the Hearing on the Motion to Suppress?
“The decision to grant or deny a motion for continuance is within the discretion of the judge.” State v. Payne, 146 Idaho 548, 567, 199 P.3d 123, 142 (2008). “In addition, the denial of a motion for continuance will not be an abuse of discretion unless it can be shown that the substantial rights of the defendant have been prejudiced.” State v. Wood, 132 Idaho 88, 106, 967 P.2d 702, 720 (1998); accord I.C.R 52.
The only issues that the defense raised before the magistrate court regarding the granting of the continuance was that granting the continuance “would impune [sic] the neutrality of the court to give them a continuance on the basis of something that the officer is claiming last second” and that the prosecutor had not “provided any lawful reason for their witness not being here.” The defense did not contend that the continuance would prejudice Ms-. Haynes. In holding that the magistrate court did not abuse its discretion in granting the continuance, the district court stated that Ms. Haynes did not suffer any prejudice by the continuance.
On appeal to this Court, Ms. Haynes seeks to raise other issues that were not presented to the magistrate court. “It is well settled that an issue not raised before the trial court cannot be raised for the first time on appeal.” State v. Howard, 150 Idaho 471, 476, 248 P.3d 722, 727 (2011). Because no prejudice was shown before the magistrate court, the district court did not err in upholding the granting of the motion for a continuance.
III.
Did the District Court Err in Upholding the Magistrate Court’s Denial of the Request for the Appointment of Another Judge to Hear an Ex Parte Motion for Additional Funds?
Idaho Criminal Rule 12.2(b) provides that a defendant’s motion seeking public funds to pay for investigative, expert, or other services that the defense believes to be necessary, shall include:
(1) The scope and details of the services requested.
*41 (2) The reasons the requested services are relevant and necessary to the defense based upon the specific facts of the ease.
(3) The name and location of the proposed providers of the services.
(4) The qualifications of the proposed providers of the services.
(5) An estimate of the total cost of the services being requested, including the hourly rate or other charges of the providers of the services, and any additional expenses, such as travel costs, that will be incurred.
(6) If the proposed providers of the services are located outside of the judicial district or the state of Idaho, an explanation of why the proposed providers should be utilized and what efforts have been made to locate providers of the requested services in the judicial district or in the state of Idaho.
The rule also provides that if the defendant is represented by a public defender, as in this ease, the motion shall be submitted to the court ex parte and the court shall decide the motion based upon the information provided by the defendant and the court record. I.C.R. 12.2(d). The rule further provides that the court may, in its discretion, ask the administrative district judge to appoint another judge to decide the motion. I.C.R. 12.2(e).
The defense did not comply with Rule 12.2(b) in making its motion in that it did not provide any of the information required by that rule. Rather, the defense merely asked the magistrate court “to appoint a magistrate judge to hear Defendant’s ex parte applications for funds to assist in the preparation of the defense.” The magistrate court denied the motion to appoint another judge because the defense did not make a sufficient showing to require such appointment; the defense did not show what the expert would do or how much the expert would cost; the defense did not show that making an ex parte showing to the magistrate court would require disclosure of the defense strategy or theories; and the defense did not show that the public defender’s office had not received sums for experts as part of its budget request. The district court held that the magistrate court did not abuse its discretion in denying the request for appointment of another judge to hear the request for additional funds.
On appeal to this Court, Ms. Haynes contends that the Due Process Clause requires the granting of a motion to appoint another judge to hear a motion for additional funds without any prehminary showing. That argument was not made to the magistrate court. Therefore, we will not consider it on appeal. “It is well settled that an issue not raised before the trial court cannot be raised for the first time on appeal." Howard, 150 Idaho at 476, 248 P.3d at 727.
IY.
Did the District Court Err in Upholding the Magistrate Court’s Denial of the Motion in Limine?
The defense asked the magistrate court to exclude from evidence the results of the breath test on the ground that the Idaho State Police had failed to create procedures that would establish' the reliability of breath testing. The State Police had adopted administrative rules setting forth requirements for breath alcohol testing. Those rules were as follows:
014. REQUIREMENTS FOR PERFORMING BREATH ALCOHOL TESTING.
01. Instruments. Each breath testing instrument model shall be approved by the department and shall be listed in the “Conforming Products List of Evidential Breath Measurement Devices” published in the Federal Register by the United States Department of Transportation as incorporated by reference in Section 004 of this rule. (4-7-11)
02. Report. Each direct breath testing instrument shall report alcohol concentration as grams of alcohol per two hundred ten (210) liters of breath. (7-1-93)
*42 03. Administration. Breath tests shall be administered in conformity with standards established by the department. Standards shall be developed for each type of breath testing instrument used in Idaho, and such standards shall be issued in the form of analytical methods and standard operating procedures. (4-7-11)
04. Training. Each individual operator shall demonstrate that he has sufficient training to operate the instrument correctly. This shall be accomplished by successfully completing a training course approved by the department. Officers must retrain periodically as required by the department. (7-1-93)
05. Checks. Each breath testing instrument shall be cheeked on a schedule established by the Department for accuracy with a simulator solution provided by or approved by the department. These checks shall be performed according to a procedure established by the department. (4-7-11)
06. Records. All records regarding maintenance and results shall be retained for three (3) years. (3-19-99)
07. Deficiencies. Failure to meet any of the conditions listed in Sections 013 and 014. Any laboratory or breath testing instrument may be disapproved for failure to meet one (1) or more of the requirements listed in Sections 013 and 014, and approval may be withheld until the deficiency is corrected. (4-7-11)
IDAPA 11.03.01.014 (2013).
Pursuant to the rules, breath tests are to be administered in conformity with standards “issued in the form of analytical methods and standard operating procedures.” IDAPA 11.03.01.014.03 (2013). Ms. Haynes contended that two changes in the standard operating procedures (SOPs) would result in unreliable breath testing results. The SOPs that are relevant to her argument are: Idaho State Police, Standard Operating Procedure Breath Alcohol Testing (Jan. 15, 2009) (“2009 SOPs”), and Idaho State Police, 6.0 Idaho Standard Operating Procedure Breath Alcohol Testing (January 16, 2013) (“2013 SOPs”).
The first change she mentioned was changing the word “must” in section 2.2.11 of the 2009 SOPs to “should” in section 5.2.10 in the 2013 SOPs. The 2009 SOPs stated, “The BTS [breath testing specialists] must set the correct acceptable range limits and reference solution lot number in the instrument before proceeding with subject testing.” 2009 SOPs, § 2.2.11 (emphasis added). The corresponding provision of the 2013 SOPs stated, “The correct acceptable range limits and performance verification standard lot number should be set in the instrument before proceeding with evidentiary testing.” 2013 SOPs, § 5.2.10 (emphasis added). Ms. Haynes contends that the change from “must” in 2009 to “should” in 2013 rendered the procedure incapable of producing an accurate breath test.
Section 2.2.11 in the 2009 SOPs and section 5.2.10 in the 2013 SOPs were applicable to performing calibration checks on Intoxilyzer 5000/EN instruments. The instrument used to test Ms. Haynes’s breath was a Lifeloe FC20, which has a different procedure for performing calibration checks. 2009 SOPs § 2.1, 2013 SOPs § 5.1. Ms. Haynes has not shown how the change in the procedures for performing a calibration check on Intoxilyzer 5000/EN instruments would affect the reliability of the results of a breath test performed using a Lifeloe FC20 instrument.
The second change mentioned by Ms. Haynes related to the monitoring of the subject prior to performing the breath test. The relevant provisions of the 2009 SOPs stated:
3.1 Prior to evidential breath alcohol testing, the subject must be monitored for fifteen (15) minutes.
3.1.5 During the monitoring period, the operator must be alert for any event that might influence the accuracy of the breath test.
3.1.5.1 The operator must be aware of the possible presence of mouth alcohol as *43 indicated by the testing instrument. If mouth alcohol is suspected or indicated, the operator should begin another 15-min-ute waiting period before repeating the testing sequence.
3.1.5.2 If, during the 15-minute waiting period, the subject vomits or is otherwise suspected of regurgitating material from the stomach, the 15-minute waiting period must begin again.
2009 SOPs §§ 3.1, 3.1.5, 3.1.5.1, 3.1.5.2 (emphases added).
The corresponding provisions in the 2013 SOPs changed the word “must” to “should,” as shown below:
6.1 Prior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes. Any foreign objects/materials which have the potential to enter the instrument/breath tube or may present a choking hazard should be removed prior to the start of the 15 minute waiting period. During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/vomit/regurgitate.
6.1.4 During the monitoring period, the Operator should be alert for any event that might influence the accuracy of the breath alcohol test.
6.1.4.1 The Operator should be aware of the possible presence of mouth alcohol as indicated by the testing instrument. If mouth alcohol is suspected or indicated, the Operator should begin another 15-min-ute waiting period before repeating the testing sequence.
6.1.4.2 If during the 15-minute waiting period, the subject/individual vomits or regurgitates material from the stomach into the subjeet/individuars breath pathway, the 15-minute waiting period should begin again.
2013 SOPs, §§ 6.1, 6.1.4, 6.1.4.1, 6.1.4.2 (emphases added).
In the motion in limine, Ms. Haynes had the burden of establishing that the State could not lay a sufficient foundation for the admission of the test results. Todd v. Sullivan Constr., LLC, 146 Idaho 118, 121, 191 P.3d 196, 199 (2008). In support of her motion in limine, Ms. Haynes did not offer any evidence as to how the state trooper conducted the breath test or whether the testing instrument was properly calibrated. Therefore, she failed to show that the State could not lay a sufficient foundation for the admissibility of the test results.
“When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded.” Kirk v. Ford Motor Co., 141 Idaho 697, 701, 116 P.3d 27, 31 (2005). The magistrate court denied the motion in limine, but stated, “The evidence that comes in at the trial is still gonna have to establish that it is an accurate test.” Because Ms. Haynes pled guilty before the magistrate court made any ruling regarding the admissibility of the test, she did not preserve that issue for appeal. State v. Manzanares, 152 Idaho 410, 420, 272 P.3d 382, 392 (2012).
Ms. Haynes also argues on appeal that the 2013 SOPs are void because they were not adopted pursuant to the Administrative Procedure Act. That issue was raised in State v. Besaw, 155 Idaho 134, 306 P.3d 219 (Ct.App.2013). The magistrate court quoted the following from that opinion, “Although Besaw has exposed some troubling information about the manner in which the SOPs for breath testing have been developed or amended, we are not persuaded that he has demonstrated that the SOP procedures are incapable of yielding accurate tests.” Id. at 144, 306 P.3d at 229. The magistrate then held:
And so I’m going to deny the motion in limine based on the changing in this — of the rules or the adoption of the standard operating procedures. The evidence that comes in at the trial is still gonna have to establish that it is an accurate test. And the evidence that comes in at trial, assuming the test comes in, is not necessarily *44 uh — well, it is still subject to challenge as far as the accuracy is concerned.
The district court affirmed, again based upon the decision in Besaw.
The State argues on appeal that the State Police is not required to adopt rules pursuant to Idaho Code section 67-5231(1), which states, “Rules may be promulgated by an agency only when specifically authorized by statute.” The State contends that Idaho Code section 18-8004 does not expressly authorize the State Police to promulgate rules regarding evidentiary testing.
Idaho Code section 67-2901(1) states that the State Police is an executive department of the State government. The director of the State Police has the authority for the State Police to “[fjormulate and place in effect such rules for the Idaho state police as from time to time appear to him advisable.” I.C. § 67-2901(12)(c). The State Police rules governing alcohol testing stated, “The Director of the Idaho State Police has general rulemaking authority to prescribe rules and regulations for alcohol testing, pursuant to Section 67-2901, Idaho Code.” IDAPA 11.03.01.000 (2013).
“[Ejach state ... department or officer authorized by law to make rules” is an “agency” under the Administrative Procedure Act. I.C. § 67-5201(2).
Idaho Code section 18-8004(4) states:
Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department, or by any other method approved by the Idaho state police____
The statute requires that analysis of blood or urine “shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department.” A “laboratory” is defined as “the place at which specialized devices, instruments and methods are used by trained personnel to measure the concentration of alcohol in samples of blood or urine for law enforcement purposes.” IDAPA 11.03.01.010.05 (2013). Thus, it is mandatory that the State Police establish approval and certification standards for those laboratories.
A “rule” under the Administrative Procedure Act is “the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes: (a) Law or policy; or (b) The procedure or practice requirements of an agency.” I.C. § 67-5201(19). The approval and certification standards would constitute a rule under the Act. If they are not adopted in compliance with the Act, they are “voidable unless adopted in substantial compliance with the requirements of this chapter.” I.C. § 67-5231(1).
With respect to breath testing, Idaho Code section 18-8004(4) provides that “[ajnalysis of ... breath for the purpose of determining the alcohol concentration shall be performed ... by any other method approved by the Idaho state police.” The “any other method” would be a method other than in a laboratory operated or approved by the State Police. The 2013 SOPs set forth procedures to implement breath testing under section 18-8004(4). In Asarco, Inc. v. State, 138 Idaho 719, 69 P.3d 139 (2003), we further clarified what constitutes a rule under the Administrative Procedure Act.
[I]n order to provide further guidance in determining when agency action requires rulemaking, this Court adopts the reasoning of the district court and considers the following characteristics of agency action indicative of a rule: (1) wide coverage, (2) applied generally and uniformly, (3) operates only in future cases, (4) prescribes a legal standard or directive not otherwise provided by the enabling statute, (5) expresses agency policy not previously ex *45 pressed, and (6) is an interpretation of law or general policy.
Id. at 723, 69 P.3d at 143.
Under Asarco, the 2013 SOPs would constitute rules. They have wide coverage, governing the testing for breath alcohol concentration throughout the state. They are to be applied generally and uniformly, which is the purpose for adopting standards and procedures. They operate only in future cases. They prescribe a legal standard not provided by the enabling legislation. Idaho Code section 18-8004(4) did not set forth any standards relating to testing for alcohol concentration other than the formulas to be used for testing the alcohol concentration in blood, urine, and breath. Although the 2013 SOPs do not express agency policy not previously expressed, they express agency policy not previously set forth in rules adopted pursuant to the Administrative Procedure Act. The SOPs are not an interpretation of law or general policy, but the absence of that characteristic is not determinative. Therefore, they constitute rules which must be adopted in substantial compliance with the Act. I.C. § 67-5231(1). The State does not contend that the 2013 SOPs were adopted in substantial compliance with the Act. Therefore, they are void.
However, “[s]howing that the test was administered in conformity with applicable test procedures or expert testimony may suffice to establish an adequate foundation.” Dachlet v. State, 136 Idaho 752, 757, 40 P.3d 110, 115 (2002). Therefore, the fact that the 2013 SOPs are void would not have prevented the State from establishing an adequate foundation for the admissibility of the test results. As stated above, the magistrate court ruled that the State would have to establish that the test was accurate. That could be done by expert testimony. Because Ms. Haynes pled guilty prior to trial, the magistrate court never had to determine whether the State could present sufficient evidence to establish that foundation. The district court did not err in holding that the magistrate did not err in denying the motion in limine.
v.
Did the District Court Err in Affirming the Magistrate Court’s Ruling that Ms. Haynes Consented to the Breath Test?
If Ms. Haynes had refused to consent to the breath test, she would have been subject to a civil penalty of $250 and a one-year loss of her driving privileges. I.C. § 18^-8002(4). After being advised of that consequence, she consented to the test. She contended in the magistrate court that the threat of this consequence vitiated her consent. The magistrate disagreed, and the district court upheld that ruling. We affirm on a different ground.
The Fourth Amendment to the Constitution of the United States recognizes “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. The Constitution of the State of Idaho similarly protects “[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.” Idaho Const. art. I, § 17. Both provisions only protect against unreasonable searches; they do not prohibit reasonable searches. Thus, the issue is whether a request by a peace officer that a person submit to a breath test constitutes an unreasonable search where the officer had reasonable grounds to believe that the person was operating or in actual control of a motor vehicle while under the influence of alcohol. We hold that it does not.
First, the person has a diminished expectation of privacy because the person has already consented to the search. By operating or being in actual physical control of a motor vehicle, the person has given consent to evidentiary testing of alcohol concentration based upon the analysis of the person’s breath, blood, or urine if such testing is administered by a peace officer having reasonable grounds to believe that the person is under the influence of alcohol, drugs, or other intoxicating substances. I.C. § 18- *46 8002(1). Although the person can later withdraw that consent, State v. Halseth, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014), the implied consent is relevant to the expectation of privacy.
Second, the intrusion is minimal. The breath test only requires that the person blow air into a machine or other device for the purpose of measuring the alcohol concentration in the person’s exhaled breath. The breath test is not invasive, and there is no contention that it could put the person at risk of injury. The person is not required to undress or expose any portion of his or her body that is normally covered. The test is only intended to determine alcohol concentration in the person’s breath, not to determine the state of the person’s body or the person’s possible medical conditions. Thus, it would not reveal confidential medical information.
Third, the state has a compelling interest in deterring intoxicated persons from operating motor vehicles on the roads and highways of this state. “The carnage caused by drunk drivers is well documented....” South Dakota v. Neville, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 755 (1983).
Finally, the breath test cannot be completed by the use of force. It can only be completed if the person blows into the testing instrument.
For the above reasons, we hold that requiring a breath test in this circumstance was not an unreasonable search. Because consent is an exception to the warrant requirement, Halen v. State, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002), it does not apply where the search was reasonable and a warrant was therefore not required.
YI.
Conclusion.
We affirm the order of the district court.
Chief Justice J. JONES, Justices BURDICK and HORTON concur.