# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41982-2014

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

JESSE CARL RIENDEAU,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, April 2015 Term

2015 Opinion No. 81

Filed: August 24, 2015

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  Hon. John R. Stegner, District Judge, and Hon. Barry E. Watson, Magistrate Judge.

The order of the district court is underline affirmed.

Jay W. Logsdon, Kootenai County public defender, Coeur d'Alene, argued for appellant.

Lori Fleming, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Kootenai County from an order of the district court upholding rulings of the magistrate court that breath test results were admissible against the defendant.  We affirm the order of the district court.

## I.
## Factual Background.

On March 21, 2013, at around 1:00 a.m., Jesse Riendeau was arrested for driving while under the influence of alcohol by a Coeur d'Alene police officer.  The officer transported him to the jail, where the officer asked that Mr. Riendeau submit to a breath test for alcohol concentration.  He did, and the two tests showed an alcohol concentration of 0.175 and 0.181, which were in excess of the statutory limit of 0.08.  Later that day, Mr. Riendeau was charged with driving while under the influence of alcohol.

On April 23, 2013, Mr. Riendeau filed a motion to suppress the results of the breath test on the ground that the breath test constituted a search and that his consent to that search was obtained unconstitutionally by the threat of a civil penalty of $250 and a one-year suspension of his driving privileges and by the false statement that he was required by law to submit to the breath test. On May 6, 2013, he filed a motion in limine seeking to exclude from evidence the result of the breath test because the State Police's change of the word "must" to "should" in its standard operating procedures resulted in there being no standards to ensure the reliability of the test results. After an evidentiary hearing, briefing, and argument, the magistrate court denied both motions.

Mr. Riendeau then pled guilty to driving under the influence of alcohol pursuant to a conditional plea agreement which provided that he would enter a conditional plea of guilty, that he could appeal the orders denying his motions, and that if he prevailed on appeal he could withdraw his guilty plea. The court accepted the plea agreement and sentenced Mr. Riendeau. He then appealed to the district court, and it affirmed the magistrate court. He then appealed to this Court.

## II.
### Did the District Court Err in Upholding the Denial of Mr. Riendeau's Motion in Limine?

Idaho Code section 18-8004(4) provides that the Idaho State Police is to establish a method for determining the alcohol concentration of breath. The State Police adopted an administrative rule requiring that the standards for breath testing would be "issued in the form of analytical methods and standard operating procedures." IDAPA 11.03.01.14.03 (2013). On January 16, 2013, the State Police issued a document titled "6.0 Idaho Standard Operating Procedure Breath Alcohol Testing" (2013 SOPs). Mr. Riendeau contended that the procedures were rendered incapable of ensuring an accurate test by a change in the requirement for monitoring the subject for fifteen minutes prior to the test to ensure that the subject did not belch or vomit stomach material into his or her breath pathway, which could contaminate the breath sample with mouth alcohol. He pointed out that on January 15, 2009, the State Police issued a document titled "Standard Operating Procedure Breath Alcohol Testing" (2009 SOPs). Those SOPs stated that "[p]rior to evidential breath alcohol testing, the subject *must* be monitored for fifteen (15) minutes"; that "[d]uring the monitoring period, the operator *must* be alert for any

2

event that might influence the accuracy of the breath test"; that "[t]he operator *must* be aware of the possible presence of mouth alcohol as indicated by the testing instrument"; and that "[i]f, during the 15-minute waiting period, the subject vomits or is otherwise suspected of regurgitating material from the stomach, the 15-minute waiting period *must* begin again." 2009 SOPs §§ 3.1, 3.1.5, 3.1.5.1, 3.1.5.2 (emphases added). The 2013 SOPs, which were applicable to this case, changed the word "must" to "should" in the corresponding sections of those SOPs. 2013 SOPs §§ 6.1, 6.1.4, 6.1.4.1, 6.1.4.2. Mr. Riendeau argued that mouth alcohol is a significant issue with breath testing, that changing "must" to "should" resulted in there being no standard, and that there are therefore no rules by which the reliability of breath testing can be established.

The court held an evidentiary hearing regarding the motion in limine. The State called as a witness Jeremy Johnston, the forensic scientist who had drafted the 2013 SOPs. He had a bachelor of science degree and a master's degree, had graduated from the Virginia Institute of Forensic Science and Medicine, did three years of medical research at Oregon Health Sciences University, and was certified nationally with the Forensic Toxicology Certification Board in the area of alcohol expertise.

He testified that the 15-minute observation period was changed from "must" to "should" because the 15-minute observation period relies upon subjective evidence (the operator's observations) rather than upon objective evidence. He stated that the sole purpose of the 15-minute observation period is to detect mouth alcohol or external contamination to the breath pathway, but there are objective ways to determine whether or not that happened. He explained that "the instrumental readings between the first uh—the first breath sample and the second breath sample have to be within .020 of each other. That establishes an objective measurement of the lack of external contamination to those breath samples." In addition, "the instrument must be performance verified within 24 hours of a breath sample being taken for evidential purposes on the portable instruments. And for the Intoxilyzer 5000, that performance verification has to be done during the course of that breath sampling event."

When asked what was indicated by the breath samples in this case of 0.175 and 0.181, he answered: "Well, they're within the 020 correlation coefficient, which rules out mouth alcohol or external contamination to the breath pathway. It also rules out radio frequency interference as a contributing factor, and it also rules out uh, variability due to inconsistent sample delivery into

3

the instrument." Finally, he was asked, "In your expert opinion are there still standards in the standard operating procedures that would assure reliability and the test results if they're followed?" He answered, "Yes, there are, absolutely."

The arresting officer also testified at the hearing. He testified as to his standard practice. He checks the suspect's mouth to make sure it is clear of any substances and tells them not to belch, burp, vomit, or bring up anything from their stomach. He then monitors the suspect for fifteen minutes, during which time he talks to the suspect, asks the suspect for information required on the booking sheet, and reads to the subject the advisory form to comply with Idaho Code sections 18-8002(3) and 18-8002A(2). He also testified to the manner in which he conducted the evidentiary testing, that the machine worked properly, and that he performed the required performance verification.

The magistrate court found that the officer "followed all of the requirements to a T and that the standard operating procedures that are in effect are legitimate and make sure that the device is working properly and assure us the scientific validity of the instrument." The court also found that there was no showing that the testing instrument used was unreliable. The court concluded that the breath test results would be admissible assuming that the proper foundation was laid at trial.

On appeal to the district court, Mr. Riendeau contended that the removal of the mandatory requirement of monitoring the suspect for fifteen minutes to ensure that there was no mouth alcohol renders the 2013 SOPs incapable of ensuring accuracy in breath testing. The district court rejected that argument, based upon the opinion of the Idaho Court of Appeals in *State v. Besaw*, 155 Idaho 134, 306 P.3d 219 (Ct. App. 2013), wherein the court rejected the notion that the SOPs were "incapable of yielding accurate tests." 155 Idaho at 144, 306 P.3d at 229.

On appeal to this Court, Mr. Riendeau makes the same contention. "This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard." *Slack v. Kelleher*, 140 Idaho 916, 924, 104 P.3d 958, 966 (2004). In denying Mr. Riendeau's motion in limine, the magistrate court considered the testimony of the arresting officer and of the forensic scientist and concluded, based upon their testimony, that the breath test results were admissible. In challenging that ruling on appeal to the district court, Mr. Riendeau did not contend that the

4

magistrate court abused its discretion in ruling that the test results were admissible. Therefore, the district court did not err in upholding that ruling.

Mr. Riendeau also contended in the magistrate court that the 2013 SOPs were void because they were not adopted as rules pursuant to the Administrative Procedure Act. He relied upon this Court's decision in *Asarco Inc. v. State*, 138 Idaho 719, 69 P.3d 139 (2003). The magistrate court rejected that contention based upon its finding that the Intoxilyzer 5000 was not shown to be unreliable, that the SOPs are the rules to follow for establishing the scientific validity of the instrument, that the arresting officer followed the SOPs when conducting the test, and that the evidence showed that the instrument was working properly.

Mr. Riendeau contended on appeal to the district court that the 2013 SOPs were void because they were not adopted according to the Administrative Procedure Act. The district court affirmed the magistrate court on the ground that in *State v. Alford*, 139 Idaho 595, 83 P.3d 139 (Ct. App. 2004), the court of appeals held that the Administrative Procedure Act did not apply to the State Police's determination of the methods to determine alcohol concentration. Actually, in that case the court of appeals merely held that the Administrative Procedure Act did not apply to approve the Alco-Sensor III as a testing device for breath alcohol concentration. 139 Idaho at 598, 83 P.3d at 142. It did not hold that the Act did not apply to the adoption of rules establishing the procedures for conducting testing for breath alcohol concentration.

In *State v. Haynes*, No. 41924-2014, 2015 WL 4940664 (Idaho Aug. 20, 2015), this Court held that the 2013 SOPs were void because they were not adopted pursuant to the Administrative Procedure Act. *Id.* at *8. However, that holding does not require reversal because we also held that expert testimony was sufficient to show that a breath test was administered in conformity with applicable test procedures. *Id.* at *9. In this case, there was expert testimony of the forensic scientist and the testimony of the arresting officer to show that the test results were admissible. Therefore, the district court's affirmance of the magistrate court's denial of Mr. Riendeau's motion in limine will be upheld on another ground.

### III.
### Did the District Court Err in Upholding the Magistrate Court's Ruling that Mr. Riendeau's Consent to the Breath Test Was Valid?

Before Mr. Riendeau submitted to the breath test, the arresting officer read to him the advisory form required by Idaho Code sections 18-8002(3) and 18-8002A(2). That form informs a suspect of the consequences of refusing to take or complete the test and of failing the test. The form read to Mr. Riendeau stated, "You are required by law to take one or more evidentiary test(s) to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body." It also told him that if he refused to take or complete the test, he would be subject to a civil penalty of $250 and would have his driving privileges suspended absolutely for one year unless within seven days he requested a court hearing to show why he refused to submit to the test and prevailed at that hearing.

Mr. Riendeau moved to suppress the test results on the ground that the breath test constituted a search and that his consent to that search was invalid because it was obtained by the threat of sanctions—a $250 civil penalty and a one-year absolute suspension of his driving privileges. He also contended that the statement that he was required by law to submit to the test was false in light of *Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552 (2013), and therefore the false statement that he was required by law to submit to the test voided his consent in the same manner that the false statement by law enforcement that they had a search warrant vitiated the homeowner's consent to the search in *Bumper v. North Carolina*, 391 U.S. 543, 548-550 (1968).

The magistrate held that Mr. Riendeau consented to the breath test and that consent was not affected by the information in the advisory form. Mr. Riendeau challenged that ruling on his appeal to the district court. Relying upon the plurality portion of the opinion in *McNeely*, the district court held that the threat of sanctions had no bearing on the validity of Mr. Riendeau's consent. Only Justices Scalia, Ginsburg, and Kagan joined in Part III of the *McNeely* opinion. 133 S.Ct. at 1556. In her plurality opinion, Justice Sotomayor wrote that laws adopted by all fifty states "impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id*. at 1566. In support of that statement, Justice Sotomayor wrote, "see also *South Dakota v. Neville*, 459 U.S. 553, 554, 563–564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination)." *Id*. In her statement regarding *Neville*, Justice Sotomayor cited to pages 554 and 563-64 of the opinion, where the Court held that admission into evidence of the defendant's

6

refusal to submit to the blood-alcohol testing did not violate the Fifth Amendment. In support of its holding, the district court relied on the statement at page 560 of the *Neville* opinion in which the Court stated that a one-year revocation of driving privileges for refusing to take a blood-alcohol test "is unquestionably legitimate, assuming appropriate procedural protections." *Neville*, 459 U.S. at 560. We need not delve into whether the *McNeely* plurality's reference to one portion of the *Neville* opinion validated the dicta in another portion of the opinion. Instead, we uphold the order of the district court on the ground that the breath test was not an unreasonable search and therefore did not violate either the Fourth Amendment to the Constitution of the United States or Article 1, § 17, of the Idaho Constitution. *State v. Haynes*, No. 41924-2014, 2015 WL 4940664, at *9-10 (Idaho Aug. 20, 2015).

## IV.
## Conclusion.

We affirm the order of the district court that the breath test results were admissible.

Chief Justice J. JONES, Justices BURDICK and HORTON **CONCUR.**

W. JONES, Justice, concurring,

For the same reason I concurred in *State v. Haynes* I also concur here. The majority holds herein that the administration of the breath test did not violate Mr. Riendeau's rights because both the U.S. Constitution and the Idaho Constitution only protect against *unreasonable* searches (and breath tests are *reasonable)*. I feel that such a ruling improperly applies a general reasonableness standard for warrantless searches in lieu of the well-established rule that an explicitly recognized exception to the warrant requirement is needed. In this case, the Defendant voluntarily consented to the breath test, which constitutes an exception to the warrant requirement. The fact that the breath test was reasonable, while true, does not in and of itself constitute such an exception. Accordingly, I concur with the majority that the district court's order that the breath test results were admissible should be upheld, but I do not concur with the majority's failure to identify and apply an exception to the warrant requirement.