Judge GUTIERREZ,
dissenting.
I respectfully dissent from the majority’s conclusion that Bobeck consented to a blood draw. Since the United States Supreme Court issued Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), the Idaho Supreme Court has not yet addressed unconscious drivers within the context of Idaho’s implied consent law. In my view, an unconscious individual is incapable of giving the consent required for a warrant-less blood draw. Because Bobeck did not give actual consent to the blood draw, there is no warrant requirement exception applicable here. The warrantless search (the blood draw) was therefore unconstitutional.
The majority notes that a warrantless search must fall into a warrant requirement exception, such as consent. Idaho Code § 18-8002 creates implied consent in an attempt to satisfy the warrant requirement exception, allowing officers to perform warrantless evidentiary tests on suspected intoxicated drivers. But statutorily implied consent is insufficient to satisfy the consent exception to the warrant requirement. The consent exception requires actual consent. Implied consent may lead to actual consent when a driver agrees to submit to an evidentiary test. But without such agreement, there is no consent for performing the test. Indeed, the majority, citing Bumper v. North Carolina, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802-03 (1968), acknowledges that “mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent.” Instead, as Justice W. Jones writes in a concurrence for the recently issued decision in State v. Haynes, 159 Idaho 36, 355 P.3d 1266 (2015), a driver must either give actual consent, or “object or take steps to withdraw her implied consent.” See also State v. Riendeau, 159 Idaho 52, 355 P.3d 1282 (2015) (Jones, W., J., concurring) (recognizing the “well-established rule that an explicitly recognized exception to the warrant requirement is needed,” and disagreeing with the majority’s holding that a reasonable search (i.e., an evidentiary test) is sufficient to justify a warrantless search).
There is little discussion on the term “actual consent” within the context of implied consent laws. The Court of Appeals of Wisconsin clarified and distinguished between actual consent and implied consent. In State v. Padley, 354 Wis.2d 545, 849 N.W.2d 867, 879 (App.2014), the court held that if a driver consents to a blood draw after being read the advisement, the driver’s consent is actual— not implied.[1] If the driver refuses to submit to a blood draw, the driver withdraws “implied consent.” Id. The Padley court noted the term “implied consent” is “used inappropriately to refer to the consent a driver gives to a blood draw at the time a law enforcement officer requires that driver to decide *546 whether to give consent.” Id. at 876. Instead, “implied consent” refers to the driver’s choice to impart or refuse actual consent to a blood draw. Id. at 879. But “implied consent,” as set forth in the statute, does not replace actual consent. Actual consent is still required to perform the blood test. The Padley court concluded that any search of drivers covered by the state’s implied consent law must be based on a warrant, actual consent, or another warrant requirement exception. Id. at 882. Effectively, that court distinguished implied consent from actual consent, holding that even within the context of implied consent laws, a search requires actual consent.
Similarly, in Justice W. Jones’ concurrence in Haynes, he describes Idaho’s implied consent law as a choice — a driver may elect to revoke her implied consent by refusing an evidentiary test and face harsh administrative penalties, or a driver may elect to continue to give her voluntary consent by taking an evidentiary test and run the risk of failing, thereby facing criminal charges for driving under the influence. Recognizing the need to effectively enforce DUI laws, Justice W. Jones writes that “it is reasonable for the Legislature to encourage or ineentivize this choice.” But an unconscious person is unable to make this choice. When the officer drew Bobeek’s blood, the officer made that choice for Bobeck. And while the majority cites several state statutes that expressly permit officers to draw blood from unconscious drivers, Idaho does not have such a statute.
Here, the officer did not ask Bobeck to submit to the test. He merely read the ALS form to Bobeck, which informed Bobeck of her right to refuse to submit to the test. Bobeck did not give actual consent to a blood draw, and she was unable to otherwise resist, protest, or object to a blood draw.
As the majority further notes, consent must be voluntary, and whether consent is voluntary is determined by the totality of circumstances. Idaho precedent makes clear that implied consent must overcome two hurdles to qualify as voluntary: “(1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent.” State v. Wulff, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014). In Justice W. Jones’ concurrence in Haynes, he elaborates, “Idaho’s implied consent statute requires the State to prove that a driver gave his or her initial consent voluntarily and also gave voluntary consent at the time of the evidentiary test.” Haynes, 159 Idaho at 50, 355 P.3d at 1280. Justice Jones stresses that unless a driver objects or takes steps to withdraw implied consent, the driver must still give actual, voluntary consent to a blood draw. Id. at 50, 51, 355 P.3d at 1280, 1281.
The totality of circumstances analysis for determining whether consent is voluntary confirms that one circumstance — driving on Idaho roads — is insufficient to constitute actual, voluntary consent. If voluntarily driving on the roads was sufficient, the second prong articulated in Wulff (drivers must continue to give voluntary consent) would be superfluous, and there would be no need for a totality of circumstances analysis (which is required).
In sum, despite the misleading term “implied consent law,” actual consent is still required for a warrantless blood draw.

. Neither State v. Haynes, 159 Idaho 36, 355 P.3d 1266 (2015), State v. Riendeau, 159 Idaho 52, 355 P.3d 1282 (2015), nor State v. Padley, 354 Wis.2d 545, 849 N.W.2d 867, 879 (App.2014) are administrative licensing cases — rather, they are criminal cases and the United States Supreme Court has not yet indicated whether constitutional safeguards apply equally to both administrative cases and criminal cases.