84 P.3d 551

Norman MALLONEE, Plaintiff–
Appellant,

v.

STATE of Idaho, Idaho Department
of Correction and Mike Yae,
Defendants–Respondents.

No. 29032.

Supreme Court of Idaho,
Boise, December 2003 Term.

Jan. 30, 2004.

BURDICK, Justice.

## NATURE OF THE CASE

In this case, Norman Mallonee challenged the termination of his employment, claiming that he was discharged in violation of the Idaho Protection of Public Employee's Act, public policy exception for at-will employees and his First Amendment rights. He appeals from the district court's dismissal of the action upon the employer's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In his job as manager of transportation at Correctional Industries (CI), Norman Mallonee had responsibilities which included oversight of drivers who delivered furniture along with inmates from Southern Idaho Correctional Institution (SICI) that were hired for this work. Mallonee began his employment in March of 1999 and reported to Mike Yae, the CI director.

Shortly after Mallonee assumed his duties at CI, an incident arose involving a CI driver (Mitch Hoitt), which prompted an investigation. Through the investigation conducted by Lt. Tim Higgins regarding the driver, it was determined that the driver had allowed the inmates to smoke cigarettes and further that the driver had, without authorization, gone outside of his delivery area to Nampa after the deliveries were completed, in violation of department policy. In a meeting scheduled after the driver was interviewed by the investigator, Yae called in the driver to discuss the allegations and to offer him the choice of resigning or being terminated. The driver resigned, putting an end to the investigation, which had not at that time been completed, and allegedly precluding discovery of the full scope of the problems with the CI drivers and inmates.

In May of 1999 Yae and Mallonee conferred about the need to have the CI drivers keep written logs. The two men discussed the importance of accurate logs and other ideas to improve the monitoring of the drivers and security concerns in general.

Huntley, Park, LLP, Boise, for appellant. Daniel E. Williams argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Department of Correction. Phillip J. Collaer argued.

Sasser & Inglis, Boise, for respondent Yae. Clay M. Shockley argued.

In September, one of the CI drivers, Alan Even, reported to Mallonee that he had allowed inmates to smoke, wear unauthorized clothing, make unauthorized visits to their homes, and he felt he and his family were being threatened by two of the inmates. Mallonee informed the chain of command, and an investigation as to Even began. On September 15, 1999, investigator, Lt. Lee spoke with Even and with another driver, Don McPherson, who also became the focus of an investigation. Both drivers admitted to violations of the protocol and policies governing their employment.

Yae determined that the admissions of the violations by Even and McPherson merited that they be terminated. Yae ordered Mallonee to fire the two drivers, but Mallonee resisted. Recalling that the Mitch Hoitt investigation had abruptly ended with his resignation, Mallonee indicated that he could not fire the drivers while the investigation was still pending and reminded Yae that discussing an ongoing investigation was prohibited. Mallonee then spoke to Yae's supervisor, Don Drum, and Warden Wright, expressing concern about the repercussions of not complying with Yae's order to fire the drivers. On September 17, 1999, a briefing was held disclosing the status of the investigation, after which Yae reiterated his order that Mallonee fire the drivers.

On the following Monday, September 20, 1999, Yae sent Mallonee an e-mail spelling out the steps to take with regard to obtaining Lt. Lee's final investigative report, calling in the two drivers and presenting them with the option of resigning or being terminated. Yae directed Mallonee to "do it Tuesday. I don't think this should go past Tuesday." Yae left messages for Mallonee to call and discuss this further. On September 23, 1999, Yae called Mallonee in for a meeting to discuss Mallonee's job performance, including his inability to get things accomplished, his poor management decisions, his failure to progress with the hiring of new drivers and his refusal to follow Yae's order to discharge Even and McPherson. On September 27, 1999, Mallonee still had not acted to fire the driver, Yae gave Mallonee an evaluation and an opportunity to resign or be terminated without cause. Mallonee became hostile in response to Yae's criticisms, and Yae terminated him. Mallonee was terminated from his employment before Yae or Mallonee had seen the final written report of the investigation from Lt. Lee.

Mallonee filed suit on March 9, 2000, against the State Department of Corrections and Mike Yae for wrongful termination. The State, joined by Yae, filed a motion for summary judgment, which the district court granted dismissing all of Mallonee's claims. Mallonee requested that the district court reconsider its decision. The order on reconsideration reflected alterations of some of the court's factual findings, which did not however affect its original conclusions of law. Judgment was entered on September 23, 2002. Mallonee appeals.

## STANDARD OF REVIEW

The standard of review on appeal from the district court's entry of summary judgment is the same standard as required of the district court when initially ruling on the motion. *Truck Ins. Exch. v. Bishara,* 128 Idaho 550, 916 P.2d 1275 (1996). Summary judgment is only appropriate when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Ins. Co.,* 103 Idaho 298, 302, 647 P.2d 754, 758 (1982). On causes of action to be tried to a jury, the party opposing summary judgment is entitled to the benefit of every reasonable inference that can be drawn from the evidentiary facts. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 808 P.2d 851 (1991). All controverted facts are liberally construed in favor of the party opposing the summary judgment. *Tusch Enterprises v. Coffin,* 113 Idaho 37, 740 P.2d 1022 (1987). The existence of disputed facts will not defeat summary judgment when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. *Garzee v. Barkley,* 121 Idaho 771, 774, 828 P.2d 334, 337 (Ct. App.1992).

## ANALYSIS

Mallonee contests the summary judgment dismissing his claims, raising as issues on appeal the district court's conclusions that (1) the Idaho Protection of Public Employees Act (IPPEA) does not apply to suspected violations of state departmental policies; (2) Mallonee's termination was not in violation of public policy; (3) neither the State nor the Idaho Department of Corrections were negligent in their supervision of Mike Yae; and (4) Yae was entitled to a defense of qualified immunity. Mallonee also claims that the district court erred in failing to draw reasonable inferences in his favor as to whether his protected speech regarding Yae's orders was a motivating factor in Yae's decision to terminate Mallonee. Finally, Mallonee argues that it was error for the district court to grant the State's motion to strike the report from the Office of the Attorney General, which he claims is a public record.

## I.

■ Mallonee argues that summary judgment should not have been granted on his Idaho Protection of Public Employees Act (IPPEA) claim. He asserts that the district court read the statute, I.C. § 6–2101, too narrowly in excluding from its purview violations of departmental policy. He also asserts that the district court failed to view the evidence in a light most favorable to him as the non-moving party on the summary judgment motion.

Idaho Code § 6–2101 *et seq.* is commonly referred to as the whistle-blower statute, which seeks to "protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." Mallonee argues that the broad language of I.C. § 6–2101 is expanded by the varying language found in Sections 1(a) and (3) of I.C. § 6–2104, which addresses "law, rule or regulation adopted under the law of this state" and "law, rule or regulation adopted under the authority of the laws of this state," respectively. Mallonee insists that to exclude from the protection of the IPPEA the reporting of violations of "poli-

cies" would vitiate the purposes of the statute.

"Rule" means the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes:

(a) law or policy; or

(b) the procedure or practice requirements of an agency. The term includes the amendment, repeal, or suspension of an existing rule, but does not include:

(i) statements concerning the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public; or . . .

I.C. § 67–5201(19).

■ A rule or regulation of a public administrative body ordinarily has the same force and effect of law and is an integral part of the statute under which it is made just as though it were prescribed in terms therein. The same principles of construction that apply to statutes apply to rules and regulations promulgated by an administrative body. *Higginson v. Westergard,* 100 Idaho 687, 690, 604 P.2d 51, 54 (1979). The phrase, "rules and regulations," as routinely used is basically synonymous and with the inclusion of statutes covers the entire authority of the agency in the regulated area.

The main question before the district court was whether an Idaho Department of Correction (IDOC) policy falls within the definition of what is a rule or regulation under the terms of the statute. Applying principles of statutory construction, the district court gave the unambiguous words of the statute their plain, usual and ordinary meaning, *see Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991), and excluded agency policies not mentioned expressly in the words of the statute. *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978)(*expressio unius est exclusio alterius*). As a matter of law, the district court determined that an agency policy, because it was not promulgated under the Administrative Procedures Act, is not within the scope of the

statute. *See* I.C. 67–5206. In addition, the specific reference in I.C. § 6–2104(4) that precludes employers from implementing rules or "policies" that unreasonably restrict employees from documenting a violation indicates that laws, rules and regulations are to be differentiated from mere "policies." After free review, this Court affirms the district court's holding.

Mallonee alleged in his complaint that his objection and refusal to carry out Yae's order to summarily discharge the CI drivers was based on Mallonee's reasonable and good faith belief that taking such action before the completion of Lieutenant Lee's investigation would violate the Department of Correction rules, regulations and procedures, as well as good investigatory practice. Mallonee claimed that he was discharged because he had communicated in good faith the existence of a violation or suspected violation of a law, rule or regulation adopted under the laws of the State of Idaho, thereby violating I.C. § 6–2104. Mallonee's claim relied primarily on Policy No. 227 dealing with internal investigations of alleged misconduct by an employee, which are to be conducted fairly, objectively and in a prompt and professional manner. Mallonee relied on § 05.02.00 of the policy, which provides that "interviews during the fact finding process shall be conducted in such a manner not to jeopardize the safety of the involved parties or the integrity of further investigation." He also pointed to the policies expressed in the Notification of Rights during an Internal Investigation form, specifically,

> Refusal to testify or answer questions asked during this and any other subsequent interview concerning this investigation or the provision of false statements, misrepresentations, or incomplete statements will be considered "failure to cooperate in an investigation" and may result in corrective/disciplinary action up to, and including, dismissal.

Mallonee insisted that Yae's order to terminate the CI drivers violated Policy No. 227 and that Yae's motivation was to impede and obstruct the investigation of the drivers.

On appeal, Mallonee argues that the district court did not view the evidence most favorably to him as the non-moving party on the summary judgment motion. The standard he cites, though correct, does not authorize the district court to extend the reach of I.C. § 6–2104 to include "policies" that are not expressly mentioned in the language of the statute. The evidence on the summary judgment indicated only Mallonee's claim that Yae's order violated policy. The testimony from Lieutenant Lee dispelled any contention that Yae attempted to obstruct the investigation in any way. Further, pursuant to Policy No. 227, Yae acted within his appropriate management authority "to use any reasonable means to resolve the complaint during the fact finding process." There exists no evidence in the record that Yae's order violated either I.C. § 18–705 or I.C. § 18–1353, as Mallonee alleged, or that by following Yae's order, he would have violated any law. Moreover, the record reveals that Mallonee never specifically communicated to Don Drum, Yae's supervisor, Mallonee's belief that Yae's order violated these two statutes. Finally, Mallonee's subjective good faith belief that he was reporting a violation of the law is irrelevant where Idaho's statute does not include the term "suspected violations" and for which the IPPEA offers no protection. *Compare Melchi v. Burns Int'l Sec. Services, Inc.,* 597 F.Supp. 575 (E.D.Mich.1984) (where Michigan statute uses the words, "suspected violations").

The moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case on which that party has the burden of proof at trial. *Baxter v. Craney,* 135 Idaho 166, 16 P.3d 263 (2000). In that Mallonee has failed to assert a claim founded on a violation of law, rule or regulation, the district court properly awarded summary judgment in favor of the Respondents. The policies in Mallonee's case, like the manual at issue in *Service Employees Int'l Union Local 6 v. Idaho Dep't of Health and Welfare,* 106 Idaho 756, 683 P.2d 404 (1984), were not adopted under the APA. Thus, any violation of said policies does not state a claim against the State. Therefore, the Court concludes that the pro-

tection of the whistle-blower statute was properly denied to Mallonee.

## II.

■ Mallonee asserts that the district court erred in finding that his termination was not in violation of public policy. He maintains that public policy demands administrative investigations which are not obstructed by public officials bent upon covering up. Mallonee's characterization corresponds to the Attorney General's conclusions, which Mallonee argues the district court should have espoused in favor of substituting its own view of the facts.

According to Mallonee, the order to fire the drivers given by Yae constituted a violation of I.C. § 18–705 and I.C. § 18–1353. I.C. § 18–705 provides punishment for "every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer." I.C. § 18–1353(1)(a) defines that a person commits an offense if he "threatens unlawful harm to any person with purpose to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter."

■ In responding to the summary judgment motion, Mallonee was required to make a showing that Yae, by his order that the drivers be terminated, intended to delay or obstruct the ongoing investigation. The facts as alleged establish that Yae repeatedly ordered Mallonee to terminate the drivers and that Mallonee continued to resist taking the mandated disciplinary action. After a briefing on the status of the investigation, Yae sent Mallonee an e-mail setting out steps to be followed, leading up to firing the drivers no later than Tuesday, September 21, 1999, when it was expected that Lieutenant Lee's investigation would be complete. Accepting these facts as true, there was also testimony from Lieutenant Lee that he was not confronted with any lack of access or other obstructions to his investigation. Mallonee's suspicion that Yae's order was meant to delay or deflect further investigation was speculation, not a factual issue for a jury to decide. A mere scintilla of evidence or only a slight doubt as to the facts is insufficient to withstand summary judgment. *Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 730 P.2d 1005 (1986).

As to I.C. § 18–1353, Mallonee was required to show that Yae threatened unlawful harm to him, with the purpose of influencing his exercise of discretion. Any threat perceived by Mallonee could not be laid at the feet of Yae, however, because Mallonee had no discretion to not follow a legal, direct order from his superior to fire the drivers. The investigation was complete when Yae terminated Mallonee, therefore, Yae's order could not be said to have interfered with Lieutenant Lee's discretion. In that Mallonee was employed at-will, he was subject to dismissal at any time, either for cause or without cause.

■ The right to discharge an at-will employee may be limited by considerations of public policy, such as when the motivation for the firing contravenes public policy. *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330–333, 563 P.2d 54, 57 (1977). Public policy of the state is found in the constitution and statutes. *Boise–Payette Lumber Co. v. Challis Independent School Dist. No. 1 of Custer County,* 46 Idaho 403, 268 P. 26 (1928). The public policy expressed therein may serve as a basis for finding an exception to the employment at-will doctrine. *See generally* 82 Am.Jur.2d *Wrongful Discharge* § 19, at 692 (1992). The determination of what constitutes public policy sufficient to protect an at-will employee from termination for whistle blowing is a question of law. *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997).

■ The public policy exception to the employment at-will doctrine has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges. *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 668, 799 P.2d 70, 74 (1990). The public policy exception to the employment at-will doctrine limits the employer's right to discharge an employee without cause when the discharge would violate

**622**

public policy. *Crea v. FMC Corporation,* 135 Idaho 175, 16 P.3d 272 (2000).

Mallonee asserts that his refusal to comply with Yae's order to fire the drivers falls under the exception listed in *Sorensen* for refusal to commit an unlawful act. As the district court found, however, the CI drivers who admitted violating Department of Correction policies were also employees at will, and their termination could be justified with or without cause. There was nothing illegal about Yae's order to fire the drivers. Having decided that Mallonee's refusal to obey a direct order was not protected under the public policy exception, the district court determined that the question as to whether Mallonee acted in a manner sufficiently in furtherance of that policy should not go to the jury. *See Thomas v. Medical Ctr. Physicians, P.A.,* 138 Idaho 200, 208, 61 P.3d 557, 565 (2002). We conclude that Mallonee has not stated a cause of action for termination in violation of public policy, but rather an individual unsubstantiated suspicion that Yae was trying to impede an administrative investigation. We affirm the district court's dismissal pursuant to the summary judgment.

**III.**

■ Mallonee asserts that the district court should not have granted summary judgment dismissing his claim that Don Drum negligently failed to supervise his subordinate (Yae) or protect Mallonee from illegal retaliation from Yae.

■ A negligent supervision claim is based upon the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee. *Rausch v. Pocatello Lumber Co., Inc.* 135 Idaho 80, 86, 14 P.3d 1074, 1080(Ct.App.2000). In the present case, because we have found no violations of statutes, public policy or contract, no genuine issue of fact is raised concerning Mallonee's status as an at-will employee or Yae's authority to terminate an at-will employee with or without cause. Mallonee therefore has no cause of action for Drum's alleged failure to use reasonable care to protect Mallonee from termination by Yae. The summary judgment

entered in favor of the Respondents in this regard is hereby affirmed.

**IV.**

■ Next, Mallonee claims that the district court erred in dismissing his constitutional claims. He argues that he was wrongfully terminated because of his sustained voicing of concern over Yae's efforts to impede Lieutenant Lee's investigation and his repeated conversations with Don Drum about the pressure Yae was exerting upon him to fire the CI drivers. Mallonee maintains that he was terminated from his employment because of the exercise of his First Amendment right of free speech.

The allegation in the complaint stated that Mallonee's liberty interests, which are protected under 42 U.S.C. § 1983, were violated by Yae's conduct in terminating Mallonee, which stigmatized Mallonee's name without the opportunity to clear himself. In ruling on this claim at summary judgment, the district court recognized that Mallonee had stipulated that his allegations did not describe a claim either against the State or the Department of Correction, which are not "persons" within the statutory definition. As to the claim against Yae, the district court concluded that the facts do not support that Yae disseminated any stigmatizing information concerning Mallonee's discharge. Dismissal of the claim on this basis was justified.

■ In his brief on appeal, Mallonee attempts to reshape his constitutional claim, as he did at the summary judgment hearing. He argues that the district court failed to draw reasonable inferences in his favor as to whether his protected speech under the First Amendment regarding Yae's order was a motivating factor behind Yae's decision to terminate Mallonee. We need not examine whether Mallonee's speech touched upon a matter of public concern and contributed to his discharge as required by *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), because the claim does not appear in Mallonee's complaint and these substantive issues were thus never properly raised in the district court. "We will not review a trial court's alleged error on appeal

unless the record discloses an adverse ruling which forms the basis for the assignment of error." *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993). Accordingly, the Court declines to review this issue further.

We do not address the qualified immunity argument, as there is ample support for granting summary judgment against Mallonee on other grounds.

## V.

 As the final issue on appeal, Mallonee claims that the district court erred in granting the State's motion to strike Exhibit H to the affidavit of Daniel Williams that is dated April 26, 2002. Exhibit H is a letter from Scott Birch, dated December 4, 2000, reporting on an investigation conducted by the Attorney General's Office into the pattern of conduct by officials at the Department of Correction with regard to the overall operations of Correctional Industries. Mallonee contends that Exhibit H falls within I.R.E. 803(8), as "factual findings resulting from an investigation made pursuant to authority granted by law," and thus should have been admitted as an exception to hearsay under the rule.

Whether the district court erred when it granted the motion to strike is reviewed on appeal under an abuse of discretion standard. *State v. Campbell*, 123 Idaho 922, 925, 854 P.2d 265, 268 (Ct.App.1993).

I.R.E. 803(8), the "public records and report exception" provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (8) Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

Not within this exception to the hearsay rule, however, are "factual findings from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case." I.R.E. 803(8)(D).

The joint investigation initiated in October 1999, by the Idaho Attorney General and the Idaho State Police into allegations of theft and misconduct by employees of Correctional Industries led to the factual findings reported in Exhibit H. Because of the special nature of the investigation, the report of the Attorney General did not arise from the regularly conducted and regularly recorded activities of that office. As such, the factual findings from the special investigation are excluded from the hearsay exception of I.R.E. 803(8). The district court expressly stated that Exhibit H was not a public record. We affirm the district court's ruling excluding Exhibit H on the basis that the report contained therein was a report of a special investigation, not a public record maintained in the regular course of business.

## CONCLUSION

Mallonee is not entitled to the protection of the whistle-blower statute in that he alleged a violation of an interdepartmental policy that is beyond the scope of the I.C. § 6–2104. Mallonee has not supported the stated cause of action for termination in violation of public policy or for negligent supervision. The district court therefore properly dismissed these claims on summary judgment. Lastly, the district court did not abuse its discretion in striking the letter from Scott Birch regarding the Attorney General's investigation into Correctional Industries' operation, as an attachment to the affidavit of counsel submitted in opposition to Respondents' summary judgment motion.

Costs to respondent State of Idaho and Yae.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.