IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48857

GERALD ROSS PIZZUTO, JR.,                                  )
                                                           )
   Petitioner-Appellant,                   )
                                                           )
v.                                                         )      Boise, November 2021 Term
                                                           )
IDAHO DEPARTMENT OF                                        )
CORRECTION, an Executive Department of )   Opinion Filed: March 15, 2022
the State of Idaho; JOSH TEWALT,                           )
Director, Idaho Department of Correction;                  )   Melanie Gagnepain, Clerk
TYRELL DAVIS, Warden, Idaho Maximum )
Security Institution,                                      )
                                                           )
   Respondents.                            )
——————————————————————  )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The district court's dismissal of Pizzuto's complaint with prejudice is <u>affirmed</u>.

Federal Defenders Services of Idaho, Boise, for appellant. Jonah Horwitz argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents. Kenneth K. Jorgensen argued.

————————————————

BRODY, Justice.

This appeal concerns whether an execution protocol published by the Idaho Department of Correction ("the Department" or "IDOC") and approved by Josh Tewalt, the IDOC Director, must comply with procedural requirements for administrative rulemaking. Gerald Ross Pizzuto, Jr., is an inmate in the custody of the Department who has been sentenced to death. In March 2021, the Department published a document detailing the protocol for executions by the Department. Pizzuto filed a complaint in district court seeking a declaratory judgment that the protocol was invalid because it had not been adopted in compliance with the Idaho Administrative Procedure Act (APA). The district court dismissed Pizzuto's complaint. It ruled that Idaho Code section 19-2716, which provides that "[t]he director of the Idaho department of correction shall determine the

1

procedures to be used in any execution[,]" was not a legislative grant of rulemaking authority and, therefore, the APA did not apply. We reach the same conclusion: Idaho Code section 19-2716 does not require the Director to engage in administrative rulemaking. Therefore, we affirm the dismissal of Pizzuto's complaint.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Pizzuto was convicted of first degree murder and sentenced to death more than three decades ago. *Pizzuto v. State*, 168 Idaho 542, ___, 484 P.3d 823, 825 (2021). On March 30, 2021, the Department published a Standard Operating Procedure ("SOP" or "protocol"), approved by the Director purporting to apply "to all Idaho Department of Correction (IDOC) staff members involved in the administration of capital punishment and to persons in IDOC custody sentenced to capital punishment . . . ."

Two weeks after the SOP was published, Pizzuto filed a complaint in the district court against the Department and the Director (collectively, "Defendants"). Pizzuto requested a declaratory judgment that the SOP was void because it was not adopted in compliance with the rulemaking procedures of the APA. Further, Pizzuto sought an injunction preventing the Department "from implementing, giving effect to, or otherwise relying on the Protocol, including by planning, preparing, or carrying out executions" until an execution protocol is properly adopted under the APA.

The district court rejected Pizzuto's claim on the merits. Alternatively, it held the claim was non-justiciable under the generalized grievance doctrine, and that judicial abstention from rendering a decision was appropriate under the Declaratory Judgment Act. Pizzuto timely appealed the district court's dismissal of his complaint.

## II.     STANDARD OF REVIEW

The dispositive question in this case is one of statutory interpretation. "Statutory interpretation is a question of law that receives de novo review from this Court." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020) (quoting *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011)).

## III.     ANALYSIS

### A.  Idaho Code section 19-2716 does not require the Director to engage in rulemaking.

This case turns on the interpretation of Idaho Code section 19-2716, which designates lethal injection as the method of execution in Idaho and provides that the Director shall determine

2

lethal injection procedures:

> The punishment of death shall be inflicted by continuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction until death is pronounced by a coroner or a deputy coroner. The director of the Idaho department of correction shall determine the procedures to be used in any execution.

I.C. § 19-2716. Pizzuto argues that this statute—specifically its provision that the Director "shall determine" execution "procedures"—obligates the Director to promulgate lethal injection procedures as administrative rules pursuant to the APA. Because it is undisputed that the SOP was not adopted in compliance with the rulemaking requirements of the APA (such as providing notice of the intent to make rules and opportunity for public comment), Pizzuto argues the SOP must be invalidated and the Director enjoined from relying upon it. Defendants argue that this statute merely reflects that the Director is responsible for carrying out lethal injections; it does not confer rulemaking authority nor trigger the APA's rulemaking requirements.

The district court agreed with Defendants' interpretation of 19-2716. After a detailed review of the prior versions of section 19-2716 and execution procedures and practices reaching back to Idaho's territorial days, it concluded that the legislative history of section 19-2716 revealed no intent to require the Director to comply with rulemaking procedures. We do not delve into the district court's discussion of the legislative history of section 19-2716 because the relevant statutes are unambiguous. *See Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993) ("We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature."). We affirm the district court's dismissal of Pizzuto's complaint because we determine the Director was not required to engage in rulemaking under the plain language of the relevant statutes.

The basic disagreement between the parties involves the type of power that Idaho Code section 19-2716 instructs the Director to exercise. Executive agencies can act in up to three distinct capacities, depending on the statutes creating them and defining their scopes of authority. They may act in (1) a purely executive capacity by carrying out statutory directives; or (2) a quasi-judicial capacity by defining the rights and duties of individuals through deciding contested cases and issuing orders; or (3) a quasi-legislative capacity by defining the rights and duties of the public

3

through rulemaking. When acting in a quasi-legislative capacity, the APA imposes certain requirements on agencies, including public notice and comment procedures, *see* I.C. §§ 67-5220 to -5222, and submission of rules to the legislature for review. *See* I.C. § 67-529. Pizzuto maintains that because section 19-2716 instructs the Director to exercise quasi-legislative authority, the APA's rulemaking requirements apply. Defendants maintain that section 19-2716 involves a purely executive authority; therefore, the APA does not apply.

At the outset, Defendants contend that the only statute we must examine to resolve this dispute is section 19-2716. Because this statute uses the words "determine" and "procedures"—instead of words such as "promulgate" and "rules," which are commonly found in statutes authorizing rulemaking—Defendants assert we need not look further than section 19-2716 to conclude the statute does not contemplate rulemaking. Pizzuto argues we must evaluate section 19-2716 alongside the APA's definition of "rule." We agree with Pizzuto. The language identified by Defendants may be sufficient in some contexts to indicate that the legislature has authorized or required rulemaking, but nothing in the APA or our case law suggests that such "magic words" are necessary. Instead, it is reasonable to conclude that when a statute requires an agency to produce something that fits the APA's definition of a rule, the legislature has required rulemaking. However, we disagree with Pizzuto that section 19-2716 is such a statute.

The APA defines "rule" as follows:

> "Rule" means the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes:
>
> > (a) Law or policy; or
> > (b) The procedure or practice requirements of an agency. The term includes the amendment, repeal, or suspension of an existing rule, but does not include:
> >
> > > (i) Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public . . . .

I.C. § 67-5201(19). "General applicability" is the first attribute of a rule under this definition—and for good reason. The general applicability of a rule is, perhaps, the most salient characteristic distinguishing quasi-legislative rulemaking from a purely executive or quasi-judicial agency action.

In the context of administrative rules, general applicability has two meanings. First, it

4

means that rules apply uniformly *to the public*. Like statutes, rules apply comprehensively to the class of persons or course of conduct covered by the rule. *See Eller v. Idaho State Police*, 165 Idaho 147, 160, 443 P.3d 161, 174 (2019) (quoting *Mallonee v. State*, 139 Idaho 615, 619, 84 P.3d 551, 555 (2004) (noting that a rule has "the same force and effect of law and is an integral part of the statute under which it is made just as though it were prescribed in terms therein"). This distinguishes rulemaking from quasi-judicial agency actions because quasi-judicial actions determine only the rights and duties of individuals.

The second way in which rules are generally applicable is that they must be applied uniformly *by the agency*. Because rules have the force and effect of law, they are binding both on the public and on the agency. *See Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 263, 715 P.2d 927, 933 (1985) (holding that an agency "must[] observe and be bound by its own rules"). Thus, although an agency may have the discretion to change its rules from time to time (complying with the rulemaking procedures of the APA, of course), it does not have discretion to depart from its rules while they are in effect. This distinguishes rulemaking from purely executive actions, in which an agency (or officer) enjoys discretion so long its actions are not contrary to express law.

A plain reading of section 19-2716 does not require the Director to engage in the quasi-legislative act of rulemaking. After providing that the death penalty in Idaho shall be by lethal injection, section 19-2716 provides that "[t]he director of the Idaho department of correction shall determine the procedures to be used in *any* execution." (Emphasis added.) Defendants argue, and we agree, that section 19-2716's use of the word "any" connotes case-by-case decision-making by the Director. Case-by-case decisions are axiomatically not "statements of general applicability"; they are the hallmark of executive discretion. Therefore, section 19-2716 instructs the Director to act in an executive capacity, not a quasi-legislative one, and the APA does not apply.

Pizzuto seeks to avoid this conclusion by citing Merriam-Webster's Thesaurus for the proposition that "any" is equivalent to "every." *See Any*, MERRIAM-WEBSTER'S THESAURUS, https://www.merriam-webster.com/thesaurus/any (last visited Mar. 14, 2022). Pizzuto then asserts that the words "any execution" in section 19-2716 mean "*every* execution," and this phrase "suggests the sort of comprehensive policy envisioned by the APA." But we do not assess the meanings of words by plucking synonyms from a thesaurus. We ascribe to words their "plain, usual, and ordinary meaning[s]." *See Verska*, 151 Idaho at 893, 265 P.3d at 506. The ordinary meaning of "any" is "one, some, or all indiscriminately of whatever quantity[.]" *Any*, MERRIAM-

WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/any (last visited Mar. 14, 2022). Thus, while "any" can encompass "every" or "all," it need not. The use of "any" in section 19-2716 indicates the exercise of discretion, not the making of a rule.

Pizzuto also argues that our conclusion is belied by the SOP itself. According to Pizzuto, it is telling that the "the Director [has not] written the protocol in the piecemeal fashion that [Defendants] now claim[] is demanded by § 19-2716. Quite to the contrary, the Director created a lengthy, meticulous, expansive document that is on its face intended to serve as a set of guidelines for every execution." This argument is unavailing for several reasons.

For one, Defendants have not argued that section 19-2716 "demands" piecemeal procedures. The thrust of their argument, which is consistent with the statute, is that the Director must select appropriate procedures depending on the circumstances, not that he must develop new procedures for every execution. Second, Pizzuto's assertion that the SOP applies to every execution is apparently based on the SOP's statement of scope, which states it applies to all Department staff and condemned people in the Department's custody. But read as a whole, the statement of scope is consistent with the exercise of purely executive power because it provides that the Director may modify the procedures used at any time:

> **SCOPE**
>
> This standard operating procedure (SOP) applies to all Idaho Department of Correction (IDOC) staff members involved in the administration of capital punishment and to persons in IDOC custody sentenced to capital punishment, hereafter referred to as condemned person.
>
> **Note:** This SOP is subject to revision at the discretion of the Director of the IDOC. The Director may revise, suspend, or rescind any procedural steps, at any time, at the Director's sole discretion.

In any event, the breadth of the SOP does not bear significantly on the interpretation of section 19-2716. The SOP cites several sources of law that the Department must comply with when carrying out executions, including "the Constitution of the United States, the Constitution of the State of Idaho and Idaho law, specifically Idaho Code sections 19-2705, 19-2713, 19-2714, 19-2715, 19-2716, 19-2718, and [Board of Correction] Rule 06.01.01.135." Thus, it is unsurprising that many of the provisions of the SOP have nothing to do with procedures used *in* an execution but are incidental to executions, such as provisions for selecting media witnesses and designating a public protest area. These matters are not governed by section 19-2716 and the fact that the SOP addresses them is irrelevant to our interpretation of the statute. Further, a plain reading of section

6

19-2716 only requires that the Director *determine* which procedures shall be used to carry out lethal injections—not that he must issue a rule, an SOP, or any other formal document describing what those procedures are. As such, Pizzuto's arguments based on the SOP about the meaning of section 19-2716 are unpersuasive.

To be clear, by our observation that section 19-2716 does not require the Director to issue a formal statement of execution procedures, we do not hold that the Director may carry out an execution without such a statement. The Director bears a grave responsibility to administer the death penalty consistently with the law—foremost, the right against cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article 1, section 6 of the Idaho Constitution. Experience in other jurisdictions has demonstrated the risk of unnecessary suffering that improper lethal injection poses. A lethal injection procedure published in advance of an execution allows a condemned person and his counsel to ensure that the execution will meet constitutional standards and to challenge the protocol if they believe it will not. But the constitutional sufficiency of the SOP is not at issue here. Our task here is to determine whether— as Pizzuto alleged in his complaint—the Director was required by section 19-2716 to adopt the SOP in conformance with the procedural requirements of the APA. For the reasons given above, we hold he was not.

**B. We affirm the district court's decision to deny Pizzuto's request to amend his complaint.**

In the district court, Defendants sought to avail themselves of an express exemption from the APA for the Board of Correction. *See* I.C. § 67-5201(2) (providing that the Board of Correction is not an "agency" within the meaning of the APA). Defendants argued that the Department is synonymous with the Board or, in the alternative, that the Department adopted the SOP under an authority delegated from the Board. Pizzuto disputed Defendants' position but argued that if the district court were to find Defendants' argument persuasive, it should dismiss his complaint without prejudice so he could amend it to allege violation of Idaho Code section 20-212. That statute requires the Board to submit its rules for legislative review, which it did not do before the Director published the SOP. The district court denied Pizzuto's request. It held that section 20-212 applies only to rules of the Board promulgated to carry out its duties under Chapter 2, Title 20 of the Idaho Code. Because section 19-2716 is codified in Title 19, the district court reasoned that section 20-212 was irrelevant and amendment of Pizzuto's complaint would be futile.

7

On appeal, Defendants continue to assert, as an alternative argument, that they are exempt from the APA under the exemption granted to the Board. Pizzuto continues to dispute Defendants' position. Further, Pizzuto argues that the district court erroneously denied him leave to amend his complaint because, despite the codification of the lethal injection statute in Title 19, executions fall within Title 20's broad provisions regarding the management of the prisons by the Board. *See, e.g.*, I.C. § 20-201A (providing that the Board shall have "control, direction and management of . . . correctional facilities").

Because we independently determine it would be futile for Pizzuto to amend his complaint, we need not address the substance of either party's argument or the reasoning of the district court. Section 20-212 contains a definition of "rule" identical in most respects to the definition of "rule" in the APA. *See* I.C. § 20-212(2). Lethal injection procedures determined by the Director are not rules under section 20-212 for the same reasons they are not rules under the APA. Therefore, we affirm the decision of the district court to deny Pizzuto's request to amend his complaint and to dismiss Pizzuto's complaint with prejudice. *See Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 827, 367 P.3d 208, 222 (2016) ("The Court 'will uphold the decision of a trial court if any alternative legal basis can be found to support it.' ").

**C. We abrogate the decision in *Asarco Inc. v. State*, 138 Idaho 719, 722, 69 P.3d 139, 142 (2003) to the extent that it misstated the definition of "rule" under the APA and adopted unnecessary factors to narrow that definition.**

Finally, we address a matter collateral to our decision, but which came to our attention during our consideration of the parties' arguments. Both parties cited our decision in *Asarco Inc. v. State*, 138 Idaho 719, 722, 69 P.3d 139, 142 (2003) in their arguments. In *Asarco*, we considered whether a limitation on the discharge of certain water pollutants set by the Idaho Department of Environmental Quality was a rule required to be adopted in conformance with the APA. *Asarco*, 138 Idaho at 722, 69 P.3d at 142. We summarized the APA's definition of "rule" as follows: "[U]nder the statutory definition, an agency action is a rule if it (1) is a statement of general applicability and (2) implements, interprets, or prescribes existing law." *Id.* at 723, 69 P.3d at 143. We found this definition "too broad to be workable" because "virtually every agency action would constitute a rule requiring rulemaking procedures." *Id.* Thus, the Court adopted six factors to narrow the definition:

> [I]n order to provide further guidance in determining when agency action requires rulemaking, this Court adopts the reasoning of the district court and considers the

8

> following characteristics of agency action indicative of a rule: (1) wide coverage, (2) applied generally and uniformly, (3) operates only in future cases, (4) prescribes a legal standard or directive not otherwise provided by the enabling statute, (5) expresses agency policy not previously expressed, and (6) is an interpretation of law or general policy. *See Woodland Private Study Group v. State of New Jersey,* 109 N.J. 62, 533 A.2d 387 (1987).

*Asarco*, 138 Idaho at 723, 69 P.3d at 143. Consistent with *Asarco*, the parties in this case presented argument under these factors.

However, the only apparent reason that the definition of rule was too broad in *Asarco* was because the *Asarco* Court overlooked the language in the APA itself. It is simply not true that "virtually every agency action would constitute a rule" under section 67-5201(19) because the definition of "rule" contains an exception for matters of internal agency management. *See* I.C. § 67-5201(19)(b) (providing that "statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public" are not rules). Thus, the *Asarco* Court adopted the six factors to fix a problem with *its* incomplete definition of "rule," not a problem in the statutory definition itself.

This is confirmed by examining the origin of the factors. As noted in *Asarco*, the six factors were borrowed from *Woodland Private Study Group v. State of New Jersey,* 533 A.2d 387 (N.J. 1987). *Asarco*, 138 Idaho at 723, 69 P.3d at 143. *Woodland* contains a detailed discussion of the history of the factors, which were first developed to distinguish between genuine administrative adjudications (i.e., quasi-judicial actions) and rulemaking actions disguised as adjudications to skirt formal rulemaking requirements. *Woodland*, 533 A.2d at 389–90. Over time, courts expanded the use of the factors to address instances where internal agency actions caused ripple effects that "trenche[d] on substantial private rights and interests" but, nevertheless, were not subject to notice and comment under the internal management exception to the definition of "rule" in the applicable state administrative procedure acts. *Id.* at 391–92. It was believed by these courts that such agency actions should be subject to notice and comment—even if they would not be under the express terms of the applicable APAs—and application of the six factors could correct the problem. *Id.*

Importantly, the New Jersey Supreme Court noted that some state APAs obviate the issue by adopting a narrower internal management exception. *Id.* Instead of exempting all internal management statements from rulemaking requirements, these acts exempt statements "concerning only the internal management of an agency *and not affecting private rights or procedures available to the public.*" *Id.* at 392 (quoting Conn. Gen. Stat. § 4–166(7)) (emphasis added). As already

9

noted, the definition of "rule" in Idaho's APA contains such a provision. As such, the *Asarco* factors were intended to fix a problem that does not exist in Idaho's APA.

The decision in *Asarco* was manifestly wrong to the extent it provided an incomplete definition of "rule" and adopted the six factors from *Woodland Private Study Group* to narrow that definition. Therefore, we abrogate these portions of *Asarco*. *See Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 593, 130 P.3d 1127, 1131 (2006) (holding that stare decisis does not require adherence to manifestly incorrect decisions). Importantly, however, the dispositive element of the APA's definition of "rule" in this case—that a rule is a statement of general applicability—was accurately included in *Asarco*'s definition of "rule." Moreover, the requirement of general applicability is reiterated in the second of the six factors and both parties presented argument about this factor. Thus, we find that our error in *Asarco* has had no impact in this case.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of Pizzuto's complaint with prejudice. Because our decision rests on the merits of Pizzuto's complaint, we need not address the district court's alternative bases for dismissal.

Chief Justice BEVAN, Justice MOELLER, and Justice Pro Tem BURDICK concur.


STEGNER, J., dissenting.

I respectfully dissent from the majority's opinion. Specifically, I take issue with the majority's conclusion that the word "any" in section 19-2716 means something other than "every" or "all." In my view, Idaho Code section 19-2716 requires the Director of the IDOC (the Director) to adopt procedures involving the execution of every person sentenced to death in compliance with the requirements of the Idaho Administrative Procedures Act. Accordingly, I would reverse the district court's decision and remand the case for further proceedings.

I agree with the majority that Idaho Code section 19-2716 must be interpreted "alongside the APA's definition of 'rule.'" Idaho Code section 67-5201(19) provides:

> "Rule" means the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes:
>
> (a) Law or policy; or

10

(b) The procedure or practice requirements of an agency. The term includes the amendment, repeal, or suspension of an existing rule, but does not include:

>  (i) Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public; or

>  (ii) Declaratory rulings issued pursuant to section 67-5232, Idaho Code; or

>  (iii) Intra-agency memoranda; or

>  (iv) Any written statements given by an agency which pertain to an interpretation of a rule or to the documentation of compliance with a rule.

I.C. § 67-5201(19).

The majority notes that "[t]he general applicability of a rule is, perhaps, the most salient characteristic distinguishing quasi-legislative rulemaking from a purely executive or quasi-judicial agency action." However, I fail to see how "the procedures to be used in any execution" are not applicable to *all* executions. The majority sets forth a definition of "any" that belies its own conclusion: "[t]he ordinary meaning of 'any' is 'one, some, or *all* indiscriminately of whatever quantity.'" *Any*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/any (last visited Mar. 14, 2022) (italics added). The majority next asserts that the word "any" encompasses both "every" and "all," yet somehow, under these circumstances, "it need not."

I respectfully disagree. This Court's recent decision in *State v. Haynes* is instructive here. 159 Idaho 36, 44–45, 355 P.3d 1266, 1274–75 (2015). In *Haynes*, we held that Idaho Code section 18-8004(4) requires that the Idaho State Police promulgate alcohol breath testing procedures as rules under the APA. *Id.* Idaho Code section 18-8004(4) provides in relevant part:

>  Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department, *or by any other method approved by the Idaho state police.*

I.C. § 18-8004(4) (italics added). Contrary to the majority's decision today, we did not hold in *Haynes* that Idaho Code section 18-8004(4)'s "use of the word 'any' connotes case-by-case decision-making[.]" Rather, this Court held—correctly, in my opinion—that Idaho Code section 18-8004(4) requires the Idaho State Police to promulgate rules: The phrase "any other method" was interpreted to mean *all* other methods. I would conclude the same here, and hold that the word "any" in Idaho Code section 19-2716 means "all."

Additionally, despite the majority's acknowledgement that this case "turns on the interpretation of Idaho Code section 19-2716," it fails to set forth the entirety of that statute, which must be considered when analyzing the statute. Idaho Code section 19-2716 provides, in its entirety:

> The punishment of death shall be inflicted by continuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction until death is pronounced by a coroner or a deputy coroner. The director of the Idaho department of correction shall determine the procedures to be used in any execution. *This act shall apply to all executions carried out on and after the effective date of this enactment, irrespective of the date sentence was imposed.*

I.C. § 19-2716 (italics added). When engaging in statutory interpretation, "[p]rovisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered *as a whole*, and words should be given their plain, usual, and ordinary meanings." *Saint Alphonsus Reg'l Med. Ctr. v. Elmore Cnty.*, 158 Idaho 648, 653, 350 P.3d 1025, 1030 (2015) (quoting *Am. Bank v. Wadsworth Golf Constr. Co. of the Sw.*, 155 Idaho 186, 191, 307 P.3d 1212, 1217 (2013)) (italics added).

The majority omits and therefore fails to give meaning to the final sentence of the statute in concluding that it does not require the Director to engage in "rulemaking." This omission ignores the context in which the statute is set forth; it clearly states that it "shall apply to *all* executions." I.C. § 19-2716 (italics added). Any doubt about which definition of "any" applies in section 19-2716 can therefore be resolved by considering the context of the statute as a whole. Thus, properly interpreted, the plain meaning of Idaho Code section 19-2716 is that the Director is required to adopt execution procedures for "all executions carried out on and after the effective date of this enactment . . . ." Thus, the procedures "apply comprehensively to the class of persons or course of conduct covered by the" procedures: those on Idaho's death row and their resulting executions. The persons on death row may constitute a very limited "class of persons" to whom the rule applies; however, it is nevertheless a class as contemplated by the statute. This is the very definition of general applicability and, as such, the Director was required to adopt execution procedures in compliance with the requirements of the Idaho Administrative Procedures Act. It is undisputed that the Director did not do so. As a result of this analysis, I would reverse the district court's dismissal of Pizzuto's complaint and remand the case for further proceedings.