FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS E. CREECH, | No. 22-35069 |
| Plaintiff-Appellant, | D.C. No. 1:20-cv-00114-DCN |
| and | |
| GERALD ROSS PIZZUTO, Jr., | OPINION |
| Plaintiff, | |
| v. | |
| JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity; CHAD PAGE, Chief, Division of Prisons, Idaho Department of Correction, in his official capacity; TIM RICHARDSON, Warden of the Idaho Maximum Security Institution; UNKNOWN EMPLOYEES, AGENTS, OR CONTRACTORS OF THE IDAHO DEPARTMENT OF CORRECTION, in their official capacities, | |
| Defendants-Appellees, | |
| and | |
| BRAD LITTLE, Idaho State Governor, in his official capacity, | |
| Defendant. | |

Appeal from the United States District Court

for the District of Idaho
David C. Nye, Chief District Judge, Presiding

Argued and Submitted July 24, 2023
Seattle, Washington

Before: Ronald M. Gould, Johnnie B. Rawlinson, and Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

BENNETT, Circuit Judge:

Plaintiff Thomas Creech is an Idaho prisoner facing execution by lethal injection. In this action, he challenges Idaho's execution practices, including the State's alleged failure to timely disclose information about the drugs and procedures to be used during an execution. He alleges that these practices: 1) interfere with his ability to challenge the State's method of execution as cruel and unusual punishment; 2) inhibit his ability to seek clemency; 3) inflict mental anguish; 4) increase the risk of an unconstitutionally painful execution; 5) treat similarly situated prisoners unequally; 6) violate the separation of powers under the Idaho Constitution; and 7) contravene Idaho Code § 19-2716's requirement that the director of the Idaho Department of Correction (IDOC) establish procedures governing executions.

In a prior appeal, we reversed the district court's dismissal of the amended complaint for lack of jurisdiction. *Pizzuto v. Tewalt (Pizzuto I)*, 997 F.3d 893 (9th Cir. 2021). We held that Creech's claims were ripe and that IDOC's issuance of a

2

revised execution protocol mooted some of Creech's claims. We also noted that Creech's claims did not appear to be viable, but that Creech should be permitted to amend the complaint on remand to advance any colorable claims.

On remand, and in light of then-co-plaintiff Gerald Pizzuto's scheduled execution, the district court sua sponte dismissed the complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). The court also held that amendment of the complaint would be futile and dismissed it without leave to amend. Creech then timely noticed this second appeal.

We affirm in part, vacate in part, and remand. We reject Creech's contention that the district court violated the rule of mandate by denying leave to amend in connection with the Rule 12(b)(6) dismissal of the complaint. Although our decision in *Pizzuto I* noted parenthetically that Creech should be permitted to amend the complaint, 997 F.3d at 906, we did not foreclose the district court's sua sponte dismissal of the complaint or address whether, in connection with such a dismissal, further amendment would be futile. The district court therefore was free to address those issues without violating our mandate.

We agree with the district court that amendment of several of Creech's claims would be futile. We therefore affirm the dismissal with prejudice of the First Amendment claims based on access to execution-related information (part of Claim One and Claim Two), one of the Eighth Amendment claims (Claim Three),

3

the equal protection claim (Claim Five), the statutory right to counsel claim (Claim Six), and the separation of powers claim (Claim Seven). We also affirm the dismissal of the § 19-2716 claim (Claim Eight) but instruct that, on remand, the district court should clarify that such dismissal is without prejudice.

We vacate the dismissal of three of Creech's claims, with instructions to the district court to allow leave to amend, because we do not find it clear on de novo review that those claims could not be saved by amendment. *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017). First, is that part of Claim One that alleges his attorneys' right to view Creech's entire execution. Second is Claim Four, which alleges that the State's practices violate procedural due process by depriving Creech of a meaningful opportunity to challenge his method of execution under the Eighth Amendment. Third is Claim Nine, which asserts that IDOC's failure to provide information about Creech's execution creates "a substantial risk that [he] will be subjected to severely painful executions, in violation of the Eighth Amendment." Am. Compl. ¶ 611.

## BACKGROUND

At all times relevant to this appeal, Idaho Code § 19-2716 authorized executions in Idaho to be carried out by lethal injection but delegated the details of the execution procedure to the director of IDOC. The version of the statute in effect in 2020, when this action was filed, provided:

4

The punishment of death shall be inflicted by continuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction until death is pronounced by a coroner or a deputy coroner. The director of the Idaho department of correction shall determine the procedures to be used in any execution.

Idaho Code § 19-2716 (2020). The current version of the statute, following amendment in 2023, provides:

(1) The punishment of death shall be inflicted by the following methods:

(a) Continuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction until death is pronounced by a coroner or a deputy coroner; or

(b) Firing squad.

. . .

(6) The director shall determine the procedures to be used in any execution.

*Id.* § 19-2716 (2023).

In accordance with § 19-2716, IDOC promulgates Standard Operating Procedures (SOPs) governing executions. At the time this action was filed, Idaho had last revised these procedures in 2012. The then-current version was Standard Operating Procedure Control Number 135.02.01.001, Version 3.6, commonly known as "SOP 135." Am. Compl. ¶ 48. The protocol authorized four means of lethal injection: (1) a three-drug protocol using sodium pentothal, pancuronium

5

bromide, and potassium chloride; (2) a three-drug protocol using pentobarbital, pancuronium bromide, and potassium chloride; (3) a single-drug protocol using sodium pentothal; and (4) a single-drug protocol using pentobarbital.

In June 2019, IDOC informed attorneys with the Capital Habeas Unit of Federal Defender Services of Idaho (CHU) that there would be changes to the 2012 version of SOP 135 before any executions would take place.  According to the complaint, however, IDOC "did not provide any detail on what those changes would entail or when they would be made."  *Id.* ¶ 61.

In March 2020, Creech and Pizzuto commenced this civil action in federal district court.  Defendants are IDOC Director Josh Tewalt; Division of Prisons Chief Chad Page; Idaho Maximum Security Institution Warden Tim Richardson; and unknown employees, agents, or contractors of IDOC.[1]  Plaintiffs sued defendants solely in their official capacities, and the action seeks only prospective relief.  The complaint sought to: (1) compel IDOC to issue a revised protocol setting forth the execution procedures that would govern their executions; (2) compel IDOC to provide detailed information about how their executions would be carried out; and (3) require IDOC to grant their CHU attorneys permission to access the execution chamber, witness their entire executions, and

---

[1] Idaho Governor Brad Little was dismissed as a party.

have access to cameras and phones during their executions. It sought the following execution-related information:

> (1) the number, amount, and type of drugs to be used, (2) how the drugs were made, how the drugs were/will be obtained, their source, amounts, expiration date, how they were acquired/transported/stored/tested, when IDOC obtain will [sic] the drugs, etc.[,] (3) when a new version of SOP 135 will be issued, (4) whether witnesses will be able to observe the insertion of the IVs[,] (5) procedures for IV placement/length, (6) who will participate in the execution, what is their training/qualifications, and how will they be chosen, (7) whether there will be a consciousness check and the procedure for it, and (8) procedures for botched executions.

*Id.* ¶ 498.

The complaint alleged that defendants have a history of questionable sourcing of execution drugs, revising execution procedures at the last minute, and either refusing to provide important execution-related information at all or providing that information in an untimely manner, inhibiting prisoners' ability to litigate the constitutionality of execution procedures. The complaint alleged, for example, that during Idaho's most recent execution (of Richard Leavitt in 2012), IDOC announced its intention to use a single-drug protocol of pentobarbital on May 25, 2012, just eighteen days before the execution. *Id.* ¶¶ 189–90.

The complaint contained nine claims. In Claims One and Two, the complaint asserted a right to execution-related information under the First Amendment right of public access to government proceedings and records (Claim

One) and the First Amendment right to petition the government for redress of grievances and access the courts (Claim Two). *Id.* ¶¶ 493–522. Claim One further alleged that the public's "right of access . . . includes the CHU's right to access the execution chamber, the right to witness the entire execution procedure, and the right to be permitted access to cameras and phones during the execution." *Id.* ¶ 499.

Claim Three alleged that "[t]he immense mental anxiety caused by the lack of clarity around the State's execution protocol triggers in the plaintiffs an intolerable, unnecessary, and unconstitutional degree of psychological trauma and anxiety, which amounts to an increase in the offender's punishment" and constitutes an "unnecessary and wanton infliction of pain that is prohibited by the Eighth Amendment." *Id.* ¶ 532.

Claim Four alleged that "defendants' refusal to provide the plaintiffs with information that would enable them to determine how the State intends to execute them" deprives them of procedural due process under the Fourteenth Amendment by "rais[ing] a procedural barrier to challenging the constitutionality of IDOC's execution process" under the Eighth Amendment. *Id.* ¶ 537.

Claim Five asserted that IDOC's "pattern and practice of essentially creating a new protocol for each condemned inmate as soon as his execution is imminent" means that "inmates are not treated consistently with one another in regards to their

executions" and "violat[es] the Equal Protection Clause's guarantee of equal treatment for similarly situated persons." *Id.* ¶¶ 546–47, 551.

Claim Six alleged that defendants' failure to provide execution-related information denies plaintiffs their statutory right to counsel under 18 U.S.C. § 3599 by preventing their attorneys from seeking clemency on the ground that their executions would involve an excessive risk of pain. *Id.* ¶¶ 553–77.

Claim Seven asserted that the Idaho Legislature's adoption of § 19-2716 violates separation of powers principles under the Idaho Constitution because the statute delegates unfettered discretion to IDOC to promulgate execution procedures without providing meaningful legislative standards to guide the IDOC's discretion. *Id.* ¶¶ 578–603.

Claim Eight alleged that the failure to promulgate a revised execution protocol breached IDOC's statutory obligation to "determine the procedures to be used in any executions." *Id.* ¶¶ 604–07 (quoting Idaho Code § 19-2716).

Claim Nine alleged that "IDOC's refusal to provide any meaningful information to the plaintiffs about their executions prevents the CHU from taking steps to ensure that such executions are carried out humanely," thus "creat[ing] a substantial risk that the plaintiffs will be subjected to severely painful executions, in violation of the Eighth Amendment." *Id.* ¶¶ 608–11.

Defendants moved to dismiss the complaint for both lack of jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). The district court granted the motion on jurisdictional grounds without reaching the Rule 12(b)(6) issues. *Pizzuto v. Little*, No. 1:20-CV-00114-DCN, 2020 WL 6747974 (D. Idaho Nov. 17, 2020). The court concluded that the claims were unripe because "[b]oth Pizzuto and Creech have ongoing appeals for relief from their convictions" and "the ultimate question of whether the two men will even be executed remains an undetermined and open question, rendering the claims in this case speculative and abstract." *Id.* at *4. Plaintiffs timely appealed.

While plaintiffs' appeal was pending, IDOC issued a revised execution protocol and obtained a death warrant for Pizzuto, scheduling his execution for June 2, 2021. *See Pizzuto I*, 997 F.3d at 897 n.3, 899. The revised protocol, promulgated in March 2021, specifies the same four means of lethal injection as its predecessor. *Id.* at 899 & n.5.

On May 12, 2021, we issued our opinion in *Pizzuto I*. We held that plaintiffs' claims were ripe, that IDOC's issuance of a revised protocol mooted some of plaintiffs' claims, and that plaintiffs' claims did not appear to be viable. *Id.* at 899–908. We also noted that, "[o]n remand, plaintiffs will likely seek (and should be permitted) to amend their complaint to reallege their ripe claims against the revised SOP and fix the flaws in their state law claims." *Id.* at 906.

Three days after our mandate issued, and with Pizzuto's execution imminent, the district court sua sponte dismissed the complaint for failure to state a claim upon which relief can be granted. The court also held that amendment of the original nine claims would be futile and dismissed those claims with prejudice and without leave to amend.[2] Soon after, a state court stayed Pizzuto's execution, and, with Pizzuto's consent, the district court dismissed him from the case, leaving Creech as the sole plaintiff. Creech then moved for reconsideration of the order dismissing the original claims without leave to amend, arguing, among other things, that the denial of leave to amend contravened *Pizzuto I*'s mandate. The district court rejected that argument, denied the motion for reconsideration, *see Creech v. Tewalt*, No. 1:20-cv-00114-DCN, 2022 WL 60602 (D. Idaho Jan. 5, 2022), and entered final judgment dismissing the original claims with prejudice. Creech once again timely appealed.

We note three developments during this appeal. First, Idaho adopted House Bill 658 in 2022. This legislation provides that information identifying either members of an execution team or individuals involved in supplying lethal injection drugs "shall be confidential, shall not be subject to disclosure, and shall not be

---

[2] The district court granted plaintiffs leave to file an amended complaint raising new claims challenging the revised protocol, but denied leave to amend the original nine claims, deeming those claims non-viable and concluding that amendment of those claims would be futile.

admissible as evidence or discoverable in any proceeding before any court, tribunal, board, agency, or person." Idaho Code § 19-2716A(4). It also provides that records "that could lead to the identification of any persons or entities that participate in or assist with an execution of a death sentence" are exempt from disclosure under the Idaho Public Records Act. *Id.* § 74-105(20).

Second, we take judicial notice that in recent months Idaho has twice scheduled Pizzuto's execution and that each time IDOC has suspended the revised execution protocol in connection with those planned executions. *See* Fed. R. Evid. 201(b)(2).[3]

Finally, we note that Idaho recently authorized the firing squad as an alternative method of execution. *See* 2023 Idaho Sess. Laws 390. Under the revised statute, execution by firing squad is authorized when execution by lethal injection is unavailable. *See* Idaho Code § 19-2716(4). We have not been informed of any plans to execute Creech by firing squad.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. Our review of the issues raised in this appeal is de novo. *See E.M. ex rel. E.M. v. Pajaro Valley Unified*

---

[3] The State obtained the first death warrant on November 16, 2022, and it scheduled an execution for December 15, 2022. The State allowed that death warrant to lapse due to IDOC's inability to acquire execution drugs. The State obtained a second death warrant on February 24, 2023, setting an execution date of March 23, 2023. The federal district court has since stayed that execution.

12

*Sch. Dist. Off. of Admin. Hearings*, 758 F.3d 1162, 1170 (9th Cir. 2014) ("A district court's compliance with our mandate is reviewed de novo."); *Hooper v. Shinn*, 985 F.3d 594, 615 (9th Cir. 2021) ("When a district court denies leave to amend based on a determination that the proposed claim would be futile, we review the determination of futility de novo."). Under our case law, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

## DISCUSSION

### I. Rule of Mandate

Creech contends the district court violated the rule of mandate by dismissing his original claims without leave to amend. We disagree.

"A district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). "But while 'the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the district court any issue not expressly or impliedly disposed of on appeal.'" *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (internal quotation marks omitted)

(quoting *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986)). In determining which matters fall within the compass of a mandate, "[d]istrict courts 'must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999) (as amended) (internal quotation marks omitted) (quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990)).

Here, nothing in our decision in *Pizzuto I* foreclosed the district court's sua sponte dismissal of the complaint three days after the issuance of our appellate mandate. It is true that we did not anticipate the sua sponte dismissal, but neither did we foreclose it. Furthermore, although sua sponte dismissals are unusual, they are permitted under our precedent. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981). The district court reasonably availed itself of this option here given the urgency presented by Pizzuto's imminent execution.

Once the district court exercised its discretion to sua sponte dismiss the complaint, the court properly addressed whether amendment of the original nine claims would be futile. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines

14

that the pleading could not possibly be cured by the allegation of other facts.'"

(quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247

(9th Cir. 1990) (per curiam))).  Because futility of amendment is an issue that we

did not address in *Pizzuto I*, either expressly or impliedly, the district court was

free to consider it.  *See Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) ("While a

mandate is controlling as to matters within its compass, on the remand a lower

court is free as to other issues." (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S.

161, 168 (1939))).  Thus, although the proceedings on remand did not follow the

path we had anticipated, we reject Creech's argument that the district court

violated the rule of mandate.

## II.  Whether Our Discussion of the Merits in *Pizzuto I* Was Binding and Definitive

Creech contends that our discussion of the merits of plaintiffs' claims in

*Pizzuto I* was "neither binding nor definitive," Opening Br. at 21, that the district

court construed that discussion as binding and definitive, and that the district court

erred by doing so.

First, we reject Creech's contention that our discussion of the merits in

*Pizzuto I* was not binding.  Although some of our older cases embraced the view

that "statements [that are] not necessary to [a] decision . . . have no binding or

precedential impact," *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir.

1995), we have since held that "[w]here a panel confronts an issue germane to the

15

eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes law of the circuit, regardless of whether doing so is necessary in some strict logical sense," *City of Los Angeles v. Barr*, 941 F.3d 931, 943 n.15 (9th Cir. 2019) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (in turn quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (opinion of Kozinski, J.))). Therefore, "[w]ell-reasoned dicta is the law of the circuit." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (alteration in original) (quoting *Enying Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013)). Our discussion of the merits in *Pizzuto I* may not have been necessary to the outcome, but it was reasoned. It is therefore binding, as both law of the case and circuit precedent. Creech errs in arguing otherwise.

Creech stands on firmer footing in arguing that *Pizzuto I*'s discussion of the merits was less than definitive. Our discussion of the merits in *Pizzuto I* was prompted by Pizzuto's then-pending execution and designed to guide the parties on remand. *See Pizzuto I*, 997 F.3d at 906 n.15. We couched our analysis in non-definitive terms, noting that plaintiffs' claims did not "appear" to be viable, *id.* at 907, and that plaintiffs "may" be unable to amend the complaint to state viable claims, *id.* at 906. Thus, we agree with Creech that *Pizzuto I* did not definitively address whether plaintiffs stated viable claims or whether amendment would be futile. But Creech's contention that the district court misconstrued our discussion

16

of the merits, and erred by doing so, is an argument that we need not reach. The

sole remaining issue in this appeal is whether amendment of Creech's claims

would be futile. And we review that question de novo. *See Kroessler v. CVS

Health Corp.*, 977 F.3d 803, 807 (9th Cir. 2020).

## III.  Futility of Amendment

Turning to the crux of this appeal, we address Creech's contention that the

district court erred by concluding that amendment of his original nine claims

would be futile. "Dismissal with prejudice and without leave to amend is not

appropriate unless it is clear on de novo review that the complaint could not be

saved by amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

(9th Cir. 2003) (per curiam). We apply this standard to Creech's claims in the

order in which they appear in the complaint.[4]

### A.  Claim One: First Amendment Right of Access to Government Proceedings and Records

Claim One asserted a violation of the public's First Amendment right of

access to government proceedings and records. The claim encompasses two legal

theories—(1) that Creech has a right to execution-related information and (2) that

his attorneys have certain rights of access prior to and during his execution. We

---

[4] At oral argument, Creech's counsel was unprepared to discuss futility of amendment (although the parties had briefed the issue) and argued that the issue was not before us. We disagree.

address these theories in turn.

### 1.     Access to Execution-Related Information

Creech's contention that the public's First Amendment right of access to government proceedings and records entitles him to execution-related information pertaining to execution drugs and personnel is foreclosed by our decision in *First Amendment Coalition of Arizona, Inc. v. Ryan*, 938 F.3d 1069 (9th Cir. 2019). There, plaintiffs asserted that "the First Amendment right of access to governmental proceedings entitles them to information regarding the manufacturers, sellers, lot numbers, National Drug Codes, and expiration dates of lethal-injection drugs, as well as documentation regarding the qualifications of certain execution team members." *Id.* at 1078. We disagreed, holding that "the First Amendment right of access to governmental proceedings does not entitle the plaintiffs to information regarding execution drugs and personnel." *Id.* at 1080. We explained:

> Unlike the documents to which the public has a right of access, the requested information is not part of any official record of the execution proceeding. It is simply information in the government's possession that would enhance the understanding of executions. But, as the Supreme Court has stated, the First Amendment does not "mandate[ ] a right of access to government information or sources of information within the government's control."

*Id.* at 1079 (alteration in original) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15

(1978) (plurality opinion)).

Creech argues that *First Amendment Coalition* is distinguishable because the information sought in that case was not part of any official record. Here, citing a provision of the revised protocol requiring IDOC staff to "immediately start a chain of custody document" when lethal injection chemicals are obtained, Creech contends that "[t]he Revised SOP at least arguably puts execution procedures into the official record." Opening Br. at 29.

We disagree. First, even if Creech's argument were accepted, it at most would give him access to the chain of custody document in question, not to the broader array of execution-related information he seeks. Second, Creech cites no authority supporting the proposition that the chain of custody document is subject to the public's First Amendment right of access merely because its creation is called for by IDOC's execution protocol. The chain of custody document is more closely analogous to "judicial conference notes" or "documents in [a] prosecutor's possession" (which are not subject to the public right of access) than to "documents filed in certain judicial proceedings" (which are). *First Amend. Coal.*, 938 F.3d at 1079.

In cases claiming a First Amendment right of access to criminal proceedings, the Supreme Court has "emphasized two complementary considerations": (1) "whether the place and process have historically been open to

the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct. of Cal. for the Cnty. of Riverside*, 478 U.S. 1, 8 (1986). Here, notwithstanding the significant positive role played by public access to execution-related information, *see Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 876–77 (9th Cir. 2002), Creech has not alleged that the processes he seeks access to have historically been open to the public. In *Woodford*, we stated that "[t]he public and press historically have been allowed to watch the condemned inmate enter the execution place, be attached to the execution device and then die." *Id.* at 876. Creech points to no comparable history respecting execution information.

In the alternative, Creech posits that the public has a right of access to the information he seeks because that information is "inextricably intertwined" with the execution process. Opening Br. at 30. We again disagree. Although we held in *Woodford* that the public enjoys a First Amendment right to view "those 'initial procedures' that are inextricably intertwined with the process of putting the condemned inmate to death," 299 F.3d at 877, we explained in *First Amendment Coalition* that this right does not encompass the kinds of execution-related information Creech seeks here:

> [*Woodford*] did not hold that there is a First Amendment right to examine executions in minute detail, such that witnesses could see the drug labels and the nametags of execution team members. Nor did we hold that the public

20

is entitled to all information that is "inextricably intertwined" with executions. *Woodford* did not change the default rule that the right of access "does not extend to every piece of information that conceivably relates to a governmental proceeding, even if the governmental proceeding is itself open to the public."

*First Amend. Coal.*, 938 F.3d at 1079–80 (quoting *Wood v. Ryan*, 759 F.3d 1076, 1092 (9th Cir. 2014) (Bybee, J., dissenting), *vacated*, 573 U.S. 976 (2014)).

In the district court, Creech also argued that *First Amendment Coalition* is distinguishable because in that case Arizona at least disclosed the specific drug to be used in executions, *see First Amend. Coal.*, 938 F.3d at 1073–74, while here the revised protocol fails to do so (though it specifies four lethal injection alternatives). This argument is unpersuasive because our holding did not turn on this consideration.

## 2. Counsel's Access

In Claim One, Creech also alleged that the public's First Amendment right of access to government proceedings includes the CHU's right to access and inspect the execution chamber before the execution, witness the entire execution procedure, and have access to cameras and phones during the execution.

As for his attorneys' right to "observe the entire execution" and "view the insertion of the IV," Opening Br. at 31, we have long held that "the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber, including those 'initial procedures' that are

21

inextricably intertwined with the process of putting the condemned inmate to death." *Woodford*, 299 F.3d at 877. Indeed, this right of access "encompasses a right to hear the sounds of executions in their entirety" as well. *First Amend. Coal.*, 938 F.3d at 1075.

We allow Creech to assert this claim on remand. But we note that Creech appears to be asserting the First Amendment rights of others—his attorneys and the public generally—rather than his own First Amendment right of access. The parties have not briefed the issue of whether Creech has standing to make this claim. If Creech elects to pursue this claim on remand, the district court should address whether Creech has standing to do so. *See Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) ("Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights . . . of third parties.'" (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).

In sum, we conclude that amendment of Claim One would be futile except with respect to Creech asserting that his attorneys have a right to observe the entire execution. On Claim One, we affirm in part, vacate in part, and remand with instructions to grant leave to amend Claim One as specified above.[5]

---

[5] Creech's briefs make no mention of his claims that his attorneys have a right to enter and inspect the execution chamber before any execution or that his attorneys have a right to access cameras or phones during his execution. These arguments are therefore abandoned. *See Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) ("Arguments not addressed in a brief are deemed abandoned.").

## B. Claim Two: First Amendment Right of Access to the Courts

Claim Two asserted that IDOC's refusal to provide plaintiffs with the execution-related information they seek denies them their First Amendment right to petition the government for redress of grievances, including the right of access to the courts. Am. Compl. ¶¶ 515–16. We rejected a virtually identical claim in *First Amendment Coalition*:

> The Supreme Court has explained that the First Amendment right of access to the courts does not include the right of prisoners to "discover grievances[ ] and to litigate effectively once in court." That is what the inmates seek here. According to the Second Amended Complaint, the inmates are seeking access to execution sounds and information regarding execution drugs and personnel in order to discover whether they have a colorable claim that their executions will be carried out in violation of the Eighth and Fourteenth Amendments. The First Amendment right of access to the courts does not entitle the inmates to such information.

938 F.3d at 1080–81 (alteration in original) (citation omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996)).

---

In *Pizzuto I*, we noted that, "[i]f plaintiffs wish their counsel to have phones so that they can contact the court during executions, that claim would be properly alleged under the First Amendment right of access to courts." 997 F.3d at 906. On remand, Creech is free to seek leave to amend his complaint to assert such a claim, again leaving the issue of standing to the district court. *See* Fed. R. Civ. P. 15(a)(2). We express no opinion as to whether such leave, if sought, should be granted.

23

In his briefing, Creech offers no basis for distinguishing *First Amendment Coalition*. We thus conclude that amendment of this claim would be futile and affirm the dismissal of this claim without leave to amend.

## C. Claim Three: Deliberate Indifference to Psychological Harm

Claim Three asserted that "[t]he immense mental anxiety caused by the lack of clarity around the State's execution protocol triggers in the plaintiffs an intolerable, unnecessary, and unconstitutional degree of psychological trauma and anxiety, which amounts to an increase in the offender's punishment" and constitutes an "unnecessary and wanton infliction of pain that is prohibited by the Eighth Amendment." Am. Compl. ¶ 532.

We have held that subjecting a prisoner to the unnecessary and wanton infliction of psychological pain constitutes cruel and unusual punishment under the Eighth Amendment. *See Jordan v. Gardner*, 986 F.2d 1521, 1525–30 (9th Cir. 1993) (en banc). To prevail on such a claim, a plaintiff must show both "severe psychological pain," *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012), and wantonness.[6] The mental state required to establish wantonness under the Eighth

---

[6] A showing of severe psychological pain is required because some psychological pain is an inherent aspect of living under a death sentence. *Cf. Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019) ("[T]he Eighth Amendment does not guarantee a prisoner a painless death—something that, of course, isn't guaranteed to many people, including most victims of capital crimes."); *Glossip v. Gross*, 576 U.S. 863, 869 (2015) ("[B]ecause some risk of pain is inherent in any method of execution, . . . the Constitution does not require the avoidance of all risk of pain."

24

Amendment "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  We conclude that a showing of deliberate indifference is sufficient in this context.  *Cf. Jordan*, 986 F.2d at 1528 (holding that the deliberate indifference standard applied to plaintiffs' claim that having male guards conduct random body searches of female prisoners inflicted psychological pain in violation of the Eighth Amendment).  Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, the complaint plausibly alleged neither severe psychological pain nor that defendants acted with deliberate indifference to Creech's health.  Am. Compl. ¶¶ 523–33.  And Creech has given us no reason to believe that these defects could be cured by amendment.  We therefore hold that amendment of this claim would

(citing *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality opinion))); *Creech v. Richardson*, 59 F.4th 372, 394 (9th Cir. 2023) ("[N]either the Supreme Court nor the Ninth Circuit has ever held that the duration of a death row inmate's confinement prior to execution amounts to cruel and unusual punishment." (citing *Smith v. Mahoney*, 611 F.3d 978, 998 (9th Cir. 2010))).  Circumstances may occur, however, in which even this demanding standard is satisfied.  In *McKenzie v. Day*, 57 F.3d 1461, 1466 (9th Cir. 1995), *opinion adopted*, 57 F.3d 1493 (9th Cir. 1995) (en banc), for example, we suggested that an Eighth Amendment claim would be cognizable if a state "set up a scheme to prolong the period of incarceration" or "rescheduled [an] execution repeatedly in order to torture" an inmate.

be futile and affirm the dismissal of this claim with prejudice.

### D. Claim Four: Procedural Due Process

Claim Four asserted that defendants' failure to provide the execution-related information they seek "raises a procedural barrier to challenging the constitutionality of IDOC's execution process," in violation of the Due Process Clause of the Fourteenth Amendment. Am. Compl. ¶ 537. It alleged that "[w]ithout reliable information about the manner in which the prisoner will be executed, the courts cannot meaningfully review a state's execution procedure to ensure it complies with the commands of the Constitution." *Id.* ¶ 540. The complaint also cited the example of the Leavitt execution, in which the State allegedly disclosed the execution drug just eighteen days before the scheduled execution. *Id.* ¶ 189–90.

Although other circuits to consider the issue have rejected due process claims to execution-related information, *see Jones v. Comm'r*, 811 F.3d 1288, 1295 (11th Cir. 2016); *Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016); *Zink v. Lombardi*, 783 F.3d 1089, 1108–09 (8th Cir. 2015) (en banc) (per curiam); *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014) (per curiam), we have left open the possibility that prisoners "may be able to assert a procedural due process right to [such] information" when they would otherwise be denied the opportunity to have an Eighth Amendment method-of-execution challenge heard at a

26

meaningful time and in a meaningful manner. *First Amend. Coal.*, 938 F.3d at 1080 (citing *Lopez v. Brewer*, 680 F.3d 1068, 1083–84 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part) (concluding that an inmate "has a liberty interest in avoiding a mode of execution that constitutes cruel and unusual punishment" and a "procedural due process right to have his Eighth Amendment challenge heard at a meaningful time in a meaningful manner")); *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (order) ("We acknowledge that Beaty has a strong interest in being executed in a constitutional manner . . . ."); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).

In *Pizzuto I*, we were skeptical that any such claim could succeed here, in part because Idaho had "issued an execution protocol well in advance of any death warrant in this case" and there was then "no indication the state w[ould] deviate from the procedures outlined in the revised SOP." 997 F.3d at 907. Since then, however, Idaho has twice scheduled executions and *suspended* the revised protocol, raising some doubts about whether a prisoner will be able to have an Eighth Amendment method-of-execution challenge heard at a meaningful time and in a meaningful manner. *See Pizzuto v. IDOC*, 508 P.3d 293, 297 (Idaho 2022) ("A lethal injection procedure published in advance of an execution allows a

27

condemned person and his counsel to ensure that the execution will meet constitutional standards and to challenge the protocol if they believe it will not."). Creech also points out that even if the protocol is followed, it does not identify the drug or drugs to be used in a particular execution, although it sets out four lethal injection alternatives.

Under these circumstances, and given the intervening events that postdate our decision in *Pizzuto I* and the district court's dismissal of this claim, we conclude that Creech should be given a chance to amend this claim. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2023) ("A wise judicial practice would be to allow at least one amendment regardless of how unpromising the initial pleading appears because it usually is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief."). But we express no opinion on whether such a due process right exists, or even if it does exist, whether it would apply here. We vacate the dismissal of this claim with prejudice and remand with instructions to grant leave to amend or supplement the complaint. *See* Fed. R. Civ. P. 15(a)(2), (d).[7]

---

[7] Our decision to remand arises in part from factual developments postdating the district court's judgment. We have the discretion to remand in light of such factual changes when justice requires. *See Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 676 (1944) ("When events subsequent to an appeal may affect the correctness of the judgment appealed from, this Court may vacate the judgment and remand the

**E. Claim Five: Equal Protection**

Claim Five asserted that "IDOC has established a pattern and practice of essentially creating a new protocol for each condemned inmate as soon as his execution is imminent," and thus that "inmates are not treated consistently with one another in regards to their executions." Am. Compl. ¶¶ 546–47. The complaint alleged that this differential treatment violates the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶¶ 542–52.

In *Pizzuto I*, we faulted this claim on the ground that the complaint alleged only *differential* treatment, not the *detrimental* treatment required to state an equal protection claim in this context:

> In *Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012) (per curiam), we held that "[a]bsent any pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory." *Id.* at 660–61 (emphasis in original). Plaintiffs allege only that they are being treated differently, not that they are "being treated less favorably than others generally are." *Id.* at 661.

---

cause for further proceedings."); *Pendergrast v. United States*, 416 F.2d 776, 781 (D.C. Cir. 1969) ("[I]n determining what justice does require, the Court is bound to consider any change, either in fact or law, which has supervened since the judgment was entered." (quoting *Patterson v. Alabama*, 294 U.S. 600, 607 (1935))); *see also* 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.").

997 F.3d at 907 (alteration in original).  That reasoning remains sound: to establish an equal protection claim in this context, a plaintiff must show that prison officials "treat[] prisoners differently in ways that . . . affect the *risk* of pain to which they would be subjected, and therefore the *risk* of being subjected to cruel and unusual punishment."  *Towery*, 672 F.3d at 660.

Creech acknowledges that detrimental treatment is required but argues that he has made the requisite showing because "his unique physical ailments . . . substantially increase the possibility that the Warden's discretion will be exercised detrimentally against him."  Opening Br. at 37.[8]  Creech, however, has not alleged that defendants would treat him less favorably than other inmates.  *Cf. Arthur v. Thomas*, 674 F.3d 1257, 1262–63 (11th Cir. 2012) (per curiam) (holding that plaintiff stated an equal protection claim where he alleged that the state deviated from its lethal injection protocol by failing to conduct a consciousness test, thus increasing the risk of an unconstitutionally painful execution).  He alleges only that he may suffer a less favorable outcome because of his personal medical condition.

---

[8] The complaint alleged that Creech suffers from brain damage; a history of migraine headaches; neuropsychological deficits indicative of brain dysfunction; a history of head injuries; type II diabetes; hyperlipidemia; hypertension; edema; lower back pain; and mental health conditions including major depression.  Am. Compl. ¶¶ 458–77.  It also alleged that Creech has been prescribed medications that might interact with lethal injection drugs, complicating his execution. *Id.* ¶¶ 478–79.

This is inadequate to state an equal protection claim.

We conclude that amendment of this claim would be futile and affirm the dismissal of this claim with prejudice.

### F.      Claim Six: Statutory Right to Counsel

Federal law provides for the appointment of counsel to an indigent defendant in "any post conviction proceeding [in federal court] seeking to vacate or set aside a death sentence." 18 U.S.C. § 3599(a)(2). It also provides that "[u]nless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed . . . shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant." *Id.* § 3599(e).

Claim Six alleged that Creech's counsel was appointed under § 3599, that counsel will represent Creech in state clemency proceedings, and that counsel is hampered in seeking clemency by defendants' failure to provide information about the way Creech will be executed. Am. Compl. ¶¶ 553–77. According to the complaint, "[t]he CHU cannot make an argument to the executive in support of clemency about problems with the State's plans for executions if the defendants tell them essentially nothing about those plans,"—"[i]n this way, the defendants' actions have deprived the plaintiffs of their federal statutory right to the assistance of counsel in pursuing clemency." *Id.* ¶¶ 576–77.

In *Pizzuto I*, we explained that this claim lacked merit because § 3599 "does not 'empower the court to order third-party compliance' to aid plaintiff's counsel in seeking clemency." 997 F.3d at 908 (quoting *Leavitt v. Arave*, 682 F.3d 1138, 1141 (9th Cir. 2012) (per curiam)). Creech does not challenge that reasoning in his briefing. We thus hold that amendment of this claim would be futile and affirm the dismissal with prejudice.

## G.    Claim Seven: Separation of Powers Under the Idaho Constitution

Claim Seven asserted that Idaho violates the separation of powers under the Idaho Constitution because the Idaho Legislature has delegated the responsibility for crafting execution procedures to IDOC without providing sufficient legislative guidance. Am. Compl. ¶¶ 578–603; *see* Idaho Code § 19-2716. In *Pizzuto I*, 997 F.3d at 907–08, we noted that the Supreme Court of Idaho had "soundly rejected" a virtually identical claim in *State v. Osborn*, 631 P.2d 187, 201 (Idaho 1981).

Creech posits that this case is distinguishable because the record in *Osborn*:

> did not contain the same allegations present here: Plaintiffs made extensive allegations about why IDOC needs greater legislative oversight in this area, including that state officials have sourced execution drugs in a questionable manner from dubious sources; that they have deliberately delayed the announcement of execution plans until the eleventh hour to make it impossible for inmates to vindicate their rights to judicial review; and that they have engaged in deceptive practices to hide their handling of executions from the public.

Opening Br. at 38. Nothing in the Supreme Court of Idaho's broad ruling,

32

however, turned on the factual record in the case or the context-specific need for "legislative oversight." *See Osborn*, 631 P.2d at 201. We thus hold that amendment of this claim would be futile and affirm the dismissal with prejudice.

## H. Claim Eight: Violation of Idaho Code § 19-2716

Claim Eight asserted that IDOC's failure to issue a revised protocol violated the IDOC's obligation under Idaho Code § 19-2716 to "determine the procedures to be used in any execution." Am. Compl. ¶¶ 604–07 (quoting Idaho Code § 19-2716). IDOC's issuance of a revised protocol in March 2021 mooted this claim. *See Pizzuto I*, 997 F.3d at 905. The district court therefore properly dismissed this claim without leave to amend.[9]

## I. Claim Nine: Eighth Amendment Claim Based on a Substantial Risk of Serious Harm

Claim Nine asserted that "IDOC's refusal to provide any meaningful information to the plaintiffs about their executions" creates "a substantial risk that the plaintiffs will be subjected to severely painful executions, in violation of the Eighth Amendment," because defendants' actions "prevent[] the CHU from taking steps to ensure that such executions are carried out humanely." Am. Compl.

---

[9] On remand, the district court should clarify that the dismissal of this claim is without prejudice. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (per curiam) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice . . . ."); *accord Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022).

¶¶ 609, 611.

Creech does not identify the legal framework under which this ostensible Eighth Amendment claim falls. The claim appears to be most analogous to an Eighth Amendment method-of-execution claim. To prevail on such a claim, a plaintiff must establish that the challenged execution method creates "a substantial risk of severe pain." *Glossip*, 576 U.S. at 882. The complaint alleges that Creech suffers from several physical and mental health conditions, including brain damage. Am. Compl. ¶¶ 458–77. It states that, "[a]s a result of his physical and psychological conditions, Mr. Creech has been prescribed . . . twenty-two different medications within the last two years." *Id.* ¶ 478. The complaint also alleges that "[b]rain damage elevates the risk that Mr. Creech would have an atypical reaction to an execution drug" and that "the use of certain lethal injection chemicals might complicate Mr. Creech's execution as a result of his medications." *Id.* ¶¶ 467, 479.

Given Creech's health conditions and medications, as well as the liberal policy favoring amendment, we conclude that Creech should be afforded the opportunity to amend this claim. We thus vacate the dismissal of this claim with prejudice and remand with instructions to grant leave to amend.[10]

IV. **House Bill 658**

House Bill 658, adopted while this appeal was pending, shields from

---

[10] We express no view on the merits of such a claim.

disclosure the identities of individuals serving on execution teams or involved in the procurement, handling, or use of lethal injection drugs. *See* Idaho Code §§ 19-2716A(4), 74-105(20). Creech asks us to remand this case to the district court to allow him to amend or supplement his claims to challenge these new restrictions. Because we remand on other grounds, we allow Creech, on remand, to seek leave to amend or supplement his pleadings in accord with Rule 15, to assert such claims. We express no opinion on whether such leave should be granted.

## CONCLUSION

The judgment of the district court is affirmed in part and vacated in part, and the case is remanded to the district court with instructions to grant Creech leave to amend or supplement Claims One, Four, and Nine as set forth above. Consistent with this opinion, and consistent with our affirming the district court's determination that amendment of certain claims would be futile, Creech may seek leave to amend in other respects in accordance with Rule 15. We do not decide whether such leave should be granted.[11]

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**

---

[11] Creech's unopposed motion for judicial notice (Dkt. 30) is **GRANTED**. The parties shall bear their own costs on appeal.

The mandate shall issue forthwith.